WICHITA FALLS TRACTION COMPANY V. C. Y. ELLIOTT.

No. 6331.   Decided April 17, 1935.
Rehearing overruled May 22, 1935.
(81 S. W., 2d Series, 659.)

*Wm. N. Bonner,* and *V. Childress,* both of Houston, for appellant.

Plaintiff having alleged specific acts of negligence which he was unable to prove, it was not a case in which the rule of res ipsa loquitur applied and defendant's motion for peremptory instructions should have been sustained. Baltimore City Passenger Ry. Co. v. Nugent, 86 Md., 349, 38 Atl., 779; Davis v. Castile (Com. App.), 257 S. W., 870; English v. Miller, 43

S. W. (2d) 642; Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059.

*T. R. Boone,* of Wichita Falls, for appellee.

On first question certified cited: Red Star Coaches v. Lamb, 41 S. W. (2d) 523; Texas Utility Co. v. Dear, 64 S. W. (2d) 807; Gulf, C. & S. F. Ry. Co. v. Dunman (Com. App.), 27 S. W. (2d) 116.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The Honorable Court of Civil Appeals for the Second Supreme Judicial District certifies for determination two questions: For convenience in discussion, the certificate will be stated in two sections. The first, which bears upon the first question certified, reads:

"The above styled and numbered cause is pending before us on appeal from a judgment in appellee's favor for the sum of $7,500.00 as damages alleged to have resulted from an electric shock received by him while a passenger on one of appellant's street cars.

"Appellee alleged that on the 4th day of July, 1930, he was a passenger on one of the street cars of the Wichita Falls Traction Company at that time traveling on Lamar Street in the City of Wichita Falls; that said car was traveling over its tracks near Lamar and 16th streets when the trolley wire which carried the electric current that propelled the street car either broke or sagged so that one end of the same or one end of a wire in that vicinity came in contact with said highly electrified trolley wire and said wire in that vicinity swung around through the window of the street car near which plaintiff was sitting, striking him on the right arm near the elbow joint at a place which is commonly known as the 'funny joint' or 'funny bone,' which it was alleged resulted in personal injuries and damages as set forth in the petition but which we think we need not particularly describe.

"The acts of negligence made the basis of the suit are set forth in the 7th section of the amended petition, upon which the plaintiff went to trial. This section of the petition reads:

'Plaintiff further alleges the facts to be that at the time in question plaintiff was a passenger upon the street car of the defendant and entitled to protection of at least the defendant keeping its own equipment and its own wires and its own street car in a reasonably safe condition and not allow the trolley wires to become disconnected, broken and torn down

and thrown into the side of the street car, and striking this plaintiff as he was sitting in the street car, and that by reason of the defendant's failure to have the trolley wire so stable and situated and fixed as not to fall, break and drop down the said defendant, its agents, servants and employees were guilty of negligence in the following particular (a) in failing to have a substantial trolley wire that would not break to carry the current which operated its street cars.

'(b) In failing to have poles supporting the trolley wire through which defendant carried its current, of sufficient strength as to stand the weight thereof. (c) In failing to keep other wires a sufficient distance from the trolley wires through which defendant carried its current so that the current would not be transmitted into any other wire or metal. (d) In failing to have its street car so protected that no wire carrying the high current which the defendant did carry through its trolley wire, could be thrown into the street car, and thereby strike its passengers. (e) Plaintiff further alleges that the defendant maintained and used a trolley wire, through which it carried its current of electricity to propel its street cars, that was old and worn out or defective in some manner unknown to this plaintiff and by reason thereof the same broke and an end or part of said trolley wire fell down and struck or came in contact with, this plaintiff either directly or contacted some other metal that allowed the current of electricity to come in contact with plaintiff, injuring him as herein stated, and in this connection the plaintiff alleges that the defendant was guility of negligence in using and maintaining an old and worn out and defective trolley wire through which to carry its current of electricity to propel its street cars in question.

'Plaintiff alleges that by reason of each and all of the above and foregoing grounds and acts on the part of said defendants, its agents and employees, same were each and all the proximate cause of the injuries to the plaintiff as has heretofore been set forth as well as will be hereinafter set forth.'

"The court, after giving the usual and proper definitions, submitted the case to the jury upon special issues. The issues so submitted, together with the answers of the jury, are as follows:

"1.   Do you find from a preponderance of the evidence that the plaintiff C. Y. Elliott was injured by an electric shock on or about the 4th day of July, 1930?

"Answer: Yes.

"2. Do you find from a preponderance of the evidence that the defendant's trolley wire which carried the current which operated the street car broke on or about July 4, 1930?

"Answer: Yes.

"3. Do you find from a preponderance of the evidence that the breaking of the trolley wire of the defendant was on account of the failure of the defendant, if it did fail, to have a substantial trolley wire at the place in question?

"Answer: Yes.

"4. Do you find from a preponderance of the evidence that the breaking of said trolley wire, if it did break, was on account of the negligence of the defendant, if he was negligent as that term has been defined to you herein?

"Answer: Yes.

"5. Do you find from a preponderance of the evidence that the breaking of the trolley wire, if it did break, was the proximate cause of the injuries, if any, to plaintiff herein?

"Answer: Yes.

"6. Do you find from a preponderance of the evidence that the defendant allowed its trolley wire to become defective on July 4, 1930?

"Answer: Yes.

"7. Do you find from a preponderance of the evidence that the defective condition of the trolley wire of the defendant, if it was defective, was negligence as that term has been defined to you herein?

"Answer: Yes.

"8. Do you find from a preponderance of the evidence that the defective condition of the trolley wire, if you find that it was so defective, was the proximate cause of the injuries to the plaintiff if any?

"Answer: Yes.

\* \* \* \* \*

"11. Do you find from a preponderance of the evidence that the breaking of the trolley wire of the defendant at the time in question, was not an unavoidable accident? Answer as you find the facts to be.

"Answer: Yes.

"12. Do you find from a preponderance of the evidence that plaintiff was struck on the elbow by the trolley wire of the defendant at the time and place in question?

"Answer: Yes.

"13. If you have answered special issue 12 in the affirmative, then answer:

"Do you find from a preponderance of the evidence that at the time the plaintiff was struck on the elbow, if he was so struck, the said trolley wire was charged with electricity?

"Answer: Yes.

"14. If you have answered special issue 13 'Yes' then answer:

"Do you find from a preponderance of the evidence that plaintiff received an electric shock by being struck on the elbow, at the time and place in question?

"Answer: Yes.

"15. If you have answered special issue 14 'Yes,' then answer:

"Do you find from a preponderance of the evidence that the electric shock, if any, which plaintiff received at that time, was the proximate cause of plaintiff's injuries, if any?

"Answer: Yes.

"On original hearing, this court held, upon reasoning set forth in our original opinion which will accompany this certifiicate, that the evidence was insufficient to sustain the finding of the jury of negligence on the part of the appellant company in the specific particulars alleged without applying the principle or doctrine of res ipsa loquitur, which we concluded could not be done under the authorities cited, to-wit, Davis v. Castile, 257 S. W., 870 and cases therein cited; Cecil & Co. v. Stamford Gas & Electric Co., 242 S. W., 536, and cases therein cited; Wichita Valley Ry. Co. v. Helms, 261 S. W., 225, and cases therein cited, and cases cited in Digest of Texas Reports, vol. 13, p. 226 et seq., where it is said:

'It is a general and well established rule that when one having a right to rely upon general allegations for the admission of his proof chooses to plead specially the facts upon which he relies for recovery, he must confine his proof to the facts alleged, and can recover upon no other ground,' citing a great number of cases.

"We accordingly ordered a reversal of the case for the insufficiency of the evidence on the issue of appellant's negligence.

"On motion for rehearing, however, the case of Simmons v. Terrell Electric Light Co., 12 S. W. (2d) 1011, by Section A of the Commission of Appeals, is pressed upon us. That was a case in which it was alleged a broken wire charged with electricity struck the plaintiff in his eye and injured him while walking on a sidewalk; but the plaintiff alleged that he did not know whether such wire broke and fell against his eye or whether it was already hanging down and stuck into his eye,

when he ran against it; nor did he know how long the wire had been down or whether it was old and permitted to break and hang down or because of the weight it was forced to support, or because of the fact that the limbs of the trees brushed against the wires and wore them and broke them, or because of the fact that such wires were not properly supported, or from some other reason to plaintiff unknown, the wire, was down over the sidewalk in such a manner as to injure and damage the plaintiff as alleged. It is clear in that case that the petition on its face gives notice to the defendant that the breaking or hanging of the wire was unknown to the plaintiff and hence that under the rule of 'res ipsa loquitur,' the wire being owned by and under the control of the defendant company, negligence might be inferred from the mere fact of the breaking in the absence of an explanation by the company who owned the wire and whose duty it was to exercise due care to prevent injuries.

"It will be seen by reading the plaintiff's petition that there is but a single clause, if any, indicating a want of knowledge or of an inability to prove any one of the numerous specific allegations of negligence on the part of the appellant company and thus bring this case in harmony with the case of Simmons v. Terrell Electric Light Co., supra. In the interest of certainty, we will repeat that clause:

'(e) Plaintiff further alleges that the defendant maintained and used a trolley wire, through which it carried its current of electricity to propel its street cars, that was old and worn out or defective in some manner unknown to this plaintiff and by reason thereof the same broke and an end or part of said trolley wire fell down and struck or came in contact with this plaintiff either directly or contacted some other metal that allowed the current of electricity to come in contact with plaintiff, injuring him as herein stated, and in this connection the plaintiff alleges that the defendant was guility of negligence in using and maintaining an old and worn out and defective trolley wire through which to carry its current of electricity to propel its street cars in question.'

"Upon a reconsideration of the petition in the light of special emphasis given to the clause of the petition we have just quoted and special issue No. 6 and the jury's answer thereto, which was to the effect that 'the defendant allowed its trolley wire to become defective on July 4, 1930,' some uncertainty and want of agreement on our part has arisen as to the correctness of our conclusion and we have accordingly deemed

it advisable to certify to your Honors. for determination the questions hereinafter stated.

"There was evidence to the effect that between 16th and 17th streets the trolley wire was held suspended from a wire fastened to poles on each side of the street and extending across the direction of the trolley wire at right angles; that one of these poles 'snapped in two and fell there in front of the street car'; that the trolley wire broke within some 12 or 18 inches of the wire from which the trolley wire had been suspended; that the trolley wire then, as plaintiff testified, 'flew back and flew through the window and caught' him on the elbow. Appellee further testified that he had been living near the place where the trolley broke some 16 or 17 years and had occasion often to ride the street cars and that 'the trolley wire along Lamar Avenue had been up there since I came here, about 17, 18 or 19 years ago. They used to come out there and fix them up; I do not know what they were doing to it. I never went out there to see. I paid no attention; I would just see them stopping there on Lamar street and a man on a truck at work on them.'

"There was other evidence to the effect that the trolley wire at some point not definitely fixed had been repaired. There was no testimony other than that indicated tending to explain the cause of the break in the trolley wire, nor did appellant offer testimony to show the age of the trolley wire, how long it had been in use, the effect of its use, the exact place of the repairs that had been made upon it, the necessity for such repairs, or when or where the wire had been inspected or repaired.

"By a review of the findings it will be noticed that the jury found that the wire in question 'broke' on or about July 4, 1930; that the breaking was on account of the failure of defendant to have a 'substantial trolley wire' at the place in question; that the defendant 'allowed its trolley wire to become defective' on July 4, 1930; that the breaking of the trolley wire was not an 'unavoidable accident'; that the wire was charged with electricity, causing an electric shock on the elbow of plaintiff.

"While doubtless there had been a trolley wire along the street for the period mentioned by the witness, yet he does not pretend to say that the wire at the particular place where the break was had been there all the time, or, if so, that that particular wire was the wire upon which work had been done. As already stated, upon original hearing we concluded that the

evidence failed to show with a sufficient degree of certainty that the wire at the place of the break was an old one and not a new one recently placed in that section, or that the wire, which was copper and about the thickness of a finger on the hand, had deteriorated by age or the use to which it was put. It is true that by an application of the rule of 'res ipsa loquitur' the jury was perhaps authorized to find negligence on appellant's part from the mere unexplained fact that the wire broke, that it was old, worn, defective and unsubstantial, and we accordingly submit for your determination our first question, to-wit:

"1. Is sub-section or clause (e) of the plaintiff's petition which we have quoted above, when considered in the light of all of its terms and of the other allegations in plaintiff's petition, broad enough to authorize the application of the rule of 'res ipsa loquitur' in the determination of whether appellant was guilty of negligence which proximately caused the injuries, if any, to the plaintiff"?

It is stated in 45 C. J., p. 1200, that:

"The doctrine of res ipsa loquitur, now a familiar rule of practice in the trial of negligence cases, which is frequently recognized and applied without specifically naming it, is not a rigid or arbitrary formula, but a rule that adjusts itself to circumstances. However, as it is not the naked injury but the manner and attending circumstances of the accident that justify the application of the doctrine in an action for the negligent breach of an ordinary duty, it follows, as a matter of course, that the applicability of the doctrine must depend upon the peculiar facts and circumstances of each individual case."

1 An examination of the nature and effect of the doctrine as interpreted by the decisions in this jurisdiction is necessary in order that question Number One be answered consistently with that interpretation. The Supreme Court and the courts generally of this State, recognize the res ipsa loquitur formula as being merely a rule of evidence. It is applied with frequency without specific designation. In the notable case of McCray v. Galveston H. & S. A. Ry. Co., 32 S. W., 548, Id., 89 Texas, 168, 34 S. W., 95, the rule is discussed and applied as an evidence rule. Quoting from one of the cases there reviewed the Court says: "The presumption has been more frequently applied in cases against carriers of passengers than any other cases of negligence, but there is no foundation in authority or in reason for any such limitation of the *rule of*

*evidence. \* \* \*"* (Italics ours). In St. Louis S. F. & T. Ry. Co. v. Cason, 59 Texas Civ. App., 323, 129 S. W., 394 (writ refused), the court, after discussing the case cited and others involving ·the same question, says: "So that from these authorities and numerous others which might be cited, it is safe to say that the rule of res ipsa loquitur is not one of substantive law, but *is a rule of evidence only."* (Italics ours). The court in Goldman etc., Bottling Co. v. Sindell, 140 Md., 488, 117 Atl. 866, says: "The doctrine involved contains no arbitrary or complex formulae, but is a simple rule of evidence depending upon sound sense and reason, and amounts to no more than this, that where the physical facts involved in an accident are of such a character as to compel an inference that it resulted from negligence, such facts are themselves evidence of negligence."

The rule is applied with frequency without specific designation. In McCray v. Galveston H. & S. A. Ry. Co., supra, it finds application by name in the opinion of the Supreme Court, while in the Court of Civil Appeals it is treated as a rule of evidence without designation of any character. Other instances of both courts recognizing the rule, one by the specific designation of "res ipsa loquitur," and the other without designation are to be found in Schaff v. Sanders, 257 S. W., 670, and the same case, (Com. App.), 269 S. W., 1034; in Gammage v. Gamer, 162 S. W., 980, and same case, (Com. App.), 209 S. W., 389. It is stated in the case last cited, by the writer of this opinion, speaking for the Commission, that while the doctrine of res ipsa loquitur was not applicable there, the facts of the case were such as to invoke the rule easily confused with that doctrine. The rule invoked, however, is in fact the "res ipsa" rule. The statement of the rule is there quoted, and the case turned upon its application. In jurisdictions where a different evidential effect is given the rule from that usually given it is sometimes said the rule has not been recognized. It is stated in 45 C. J., pp. 1194-6 that:

"In Michigan the presumption of negligence arising under the rule of res ipsa loquitur has not been recognized as such in the cases; on the contrary it is frequently stated in express terms that the rule has not been adopted in this state. This statement, however, in conformity with the rule as generally applied, is apparently, and in effect, but a repudiation of the doctrine as construed to raise a presumption of negligence from the mere. occurrence of the injury, rather than an actual repudiation of the principles upon which the doctrine is based."

The rule was early announced in this State, though without

the designation of res ipsa loquitur, in Texas & S. E. L. Ry. Co. v. Suggs, 62 Texas, 323, by the Supreme Court speaking through Judge Stayton, following Edgerton v. N. Y. etc., R. Co., 39 N. Y., 229; McMahon v. Davidson, 12 Minn., 357; and Sherman & Redfield on Negligence, 280. It is fully and clearly stated in Washington v. Missouri K. & T. Ry. Co. of Texas, 90 Texas, 314, 38 S. W., 764, by Judge Gaines, speaking for the court, as follows:

"But, while the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred. Railway Co. v. Suggs, 62 Texas, 323. 'Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care.' Scott v. Docks Co., 3 Hurl. & C., 596. See, also, to same effect, Transportation Co. v. Downer, 11 Wall., 129."

In Plumb v. Richmond Light etc. Co., 233 N. Y., 285, 135 N. E., 504, 25 A. L. R., 685, the New York Court of Appeals says that res ipsa loquitur, "is a symbol for the rule that the fact of the occurrence of an injury and the surrounding circumstances may permit an inference of culpability on the part of the defendant, make out plaintiff's prima facie case, and present a question of fact for the defendant to meet with an explanation." The court further states that the term "surrounding circumstances" in this connection refers not to circumstances directly tending to show lack of care in handling, such as excessive speed, lack of proper control of the car and the like, which tend in themselves to establish plaintiff's case, but only to mere neutral circumstances of control and management by the defendant, which may, when explained, appear to be entirely consistent with due care."

2 The authorities are not in accord as to the evidential effect of the application of the rule, due in some measure to the use of the terms "presumption" and "inference" loosely and indiscriminately. 45 C. J., p. 1198. It is now well settled, however, in this State that in a proper case for the application of the rule the fact of the occurrence warrants an inference of negligence, but does not compel it; that the presumption created by the happening, whether termed a presumption or an

inference, is rebuttable. The effect of the application is not to shift the burden of proof to the defendant, but only the burden of going forward with the evidence. It is stated in 45 C. J., p. 1219, that the general rule as affecting burden of proof is that where plaintiff has established a presumptive or prima facie case of negligence, by virtue of the doctrine of res ipsa loquitur, it is incumbent upon defendant, if he wishes to avoid the effect of the doctrine, to introduce evidence to explain, rebut, or otherwise overcome the presumption or inference that the injury complained of was due to negligence. The rule thus stated is firmly established in this State. Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314, 38 S. W., 764; McCray v. Railway Co, supra; Gulf C. & S. F. Ry. Co. v. Dunman (Com. Apps.), 27 S. W. (2d) 116, 72 A. L. R., 90; Ischar v. West Texas Utilities Co., (writ refused), 54 S. W. (2d) 842; Gulf C. & S. F. Ry. Co. v. Johnson, 92 Texas, 591, 50 S. W., 563.

3 It is evident from the rule as stated, and is held to be a fact necessary to invoke the rule, that the thing which caused the injury complained of must be under the management or control of defendant, and the accident must be such as in the ordinary course of things does not happen if those who have the management or control use proper care. Missouri, K. & T. Ry. Co. v. Jones, 103 Texas, 187, 125 S. W., 309; Washington v. Missouri, K. & T. Ry. Co., supra; McCray v. Galveston H. & S. A. Ry. Co., supra; Galveston H. & S. A. Ry. Co. v. Horne, 69 Texas, 643, 9 S. W., 440; Ft. Worth etc., R. Co. v. Stalcup, (writ refused), 167 S. W., 279; Texas etc. R. Co. v. Suggs, 62 Texas, 323; Galveston etc. R. Co. v. Thompson (writ refused), 116 S. W., 106; Houston & T. C. Ry. Co. v. Roach, 52 Texas Civ. App., 95, 114 S. W., 418 (writ refused).

There seems to be some confusion in the authorities as to whether the rule may be invoked in cases in which the allegations of negligence are specific; also in cases in which more than one allegation of negligence is made, and the allegations are of varying degrees of specificness. The difficulties encountered in the decisions and the confusion certain to result from attempting to make one of the tests of applying the rule the degree of generality or specificness of allegations, doubtless afforded the reason for certifying the question under discussion.

In the opinion on original hearing before certifying the question, the court says: "It is true that by an application of the rule of 'res ipsa loquitur' it may be inferred from the

mere unexplained fact that the wire broke that it was old, worn, defective and unsubstantial, but this rule cannot be applied in cases where, as here, the plaintiff has made allegations of specific acts of negligence." Some illustrations of the confusion and difficulties found in the decisions will be pointed out. In Dowdy v. Southern Traction Co., 184 S. W., 687, the Court of Civil Appeals says:

"A careful examination of the petition narrating appellee's negligence will disclose a general charge of negligence as well as a charge that the injury resulted from specific acts of negligence. * * * In short, the specific acts of negligence were averred to be the careless and negligent operation of the car, the insufficient construction of the track and bridge, and the fact that it was out of repair. *These allegations speak for themselves, and to assert that they charge specific acts of negligence is but to accord to the language used its ordinary significance.*" (Italics ours). The court refused to apply the rule.

In the same case, 219 S. W. (Com. Apps.) 1092, Judge Strong, speaking for the Commission in giving the rule applicable, says:

"The language of the petition is that defendant was negligent 'in the matter of the building, erection, and maintenance of its track, roadbed, and bridges, and the careless and negligent operation of said car.' These are mere general allegations. * * * The language used, in our opinion, *cannot be construed as charging specific acts of negligence.* Railway v. Hennessey, 75 Texas, 157, 12 S. W., 608. *The allegations of negligence being general, the rule of presumptive negligence would obtain.* * * *.*" (Italics ours).

Another illustration is found in Gammage v. Gamer Co., supra. The allegations of plaintiff were, among others, that the machine upon which he was injured was, through defendant's negligence, out of repair, dangerous and *defective;* that the lever used for shifting the belt was out of repair; that the loose pulley was worn and wabbly. Further allegations were that *plaintiff had no knowledge of such defect and they were not open to view.* The trial court submitted the issues, including the issues of defectiveness, care used in keeping the machine in repair, and diligence in inspection, in a general charge so framed that unless the jury found the machine was defective its verdict would be for defendant. The verdict was for plaintiff, thereby establishing that the machine was defective. The Court of Civil Appeals reversed and rendered the judgment for defendant upon the ground that there was

no evidence tending to show the defect was due to defendant's negligence. The Supreme Court held the unexplained automatic starting of the machine was some evidence. The submission of the issue in the general charge was an application of the rule.

The rule is applied in numerous cases in this State in which defectiveness of machinery or equipment is alleged; as in Texas & P. Ry. Co. v. Greene (Com. App.), 299 S. W., 639, Id., 291 S. W., 929, in which defectiveness of a railroad car door is alleged; in Galveston H. & S. A. Ry. Co. v. Brewer (writ refused), 4 S. W. (2d) 320, in which the basis of the negligence alleged was a defective hoisting machine; Schaff v. Sanders (Com. App.), 269 S. W., 1034, Id., 257 S. W., 670, defective spark arresters; Gammage v. Gamer Co. (Com. App)., 209 S. W., 389, Id., 162 S. W., 980, a machine defective in starting automatically and unexpectedly from some unexplained cause; in Galveston, etc., Ry. Co. v. Thompson (writ refused), 116 S. W., 106, defective railroad track; in Chicago R. I. & G. Ry. Co. v. Myers, 264 S. W., 151, negligence generally on account of sparks escaping from railroad locomotive; Gulf C. & S. F. Ry. Co. v. Johnson, 92 Texas, 591, 50 S. W., 563, defective or antiquated spark arresters; Texas Utilities Co. v. Dear, 64 S. W. (2d) 807, permitting a wire of an electric power line to break and failure to maintain a circuit breaker in generating plant. In Schaff v. Sanders, supra, Judge Blair, speaking for the court, says:

"So we must conclude that appellee having alleged, in separate and distinct counts, general matters of negligence entitling him to recover damages if proved, that he is not precluded from invoking the res ipsa loquitur doctrine in aid of such proof, although in a separate and distinct count from the one relied upon he did allege specific grounds he did not rely upon nor make any attempt to prove, for it is well settled that a plaintiff may allege as many separate and distinct counts or groups of facts constituting his cause of action or causes of action, as he may see proper, and if any one of them alleges a cause of action and is sustained by proof, he is entitled to recover, although none of the other counts were proved," citing cases.

Many allegations of negligence were made in that case, among others, one alleging the use of a defectively built and out of repair spark arrester. Judge Chapman speaking for the Commission, in recommending affirmance of the opinion of the Court of Civil Appeals, says:

"The only evidence offered by plaintiff to show that defendant was negligent as found by the jury was the testimony of defendant that he was struck in the eye by a cinder while sitting by an open window on the train, and that the injury received resulted in the loss of the sight of the right eye. The question arises as to whether this evidence was sufficient to raise the issue of negligence on the part of defendant in selecting, keeping in repair, and operating its spark arresters. This precise question was before the Court of Civil Appeals of the Fifth District in Railway Co. v. Parks, 40 Texas Civ. App., 480, 90 S. W., 343 (writ of error denied), and that court held that such evidence was sufficient to raise the issue mentioned. We copy from that case the following: 'There was evidence tending to show that hot sparks and cinders did escape from the engine and that they came in contact with plaintiff's eyes and injured them. At the time plaintiff was riding in the tenth car from the engine. Evidence that sparks and cinders from the size of a pin head to that of a pea escaped from the engine and injured plaintiff made a prima facie case of negligence on the part of defendant. This evidence raised the issue that the appliances for the prevention of the escape of sparks and cinders were defective; that, if a sufficient spark arrester had originally been provided for the engine, the same had not been kept in repair, or that the engineer was negligent in handling the engine.' "

4   The rule being one of evidence there is no reason logically for restricting its application to cases in which general negligence is alleged. A practical difficulty is found in the fact that the terms "general" and "specific" are relative, and obviously could not serve as an invariable test of applicability. There is nothing inherent in the res ipsa loquitur formula, "the thing speaks for itself," that makes it applicable to the one type of allegation and not the other. In this case it does not speak negligence directly, but defectiveness. The certificate shows the related issues of negligence and proximate cause were submitted. The degree of generality of allegation becomes immaterial except as to fixing the scope of the burden of plaintiff and the scope of the field of testimony in rebuttal of plaintiff's prima facie case. As stated in 45 C. J., p. 1225:

"Where the presumption arising by virture of the doctrine of res ipsa loquitur is of negligence generally, as under a general allegation of negligence, the application of the doctrine requires defendant to rebut or overcome the inference that the injury complained of was due to any negligent act for which

he is chargeable; however, where the scope of the presumption is limited by specific allegations of negligence, defendant's burden is merely that of showing that he was not negligent in respect of that particular with which he is charged."

5 It is apparent from the principles recognized and established by the Supreme Court as pointed out in the foregoing discussion of the nature and effect of the rule as interpreted by the decisions of this State that there are several conditions essential to make applicable the "res ipsa" rule. An essential allegation necessary to warrant its application in a case in which defectivness in equipment is alleged is that the management and control of the equipment which produced the injury shall be with the defendant exclusively. The theory is that plaintiff is not in a position to show the particular circumstances which caused the equipment to operate to his injury, and that defendant possesses the superior knowledge or means of information as to the cause of the defect, if any; and should therefore be required to produce the evidence in explanation. McCray v. Railway Co., supra; Simmons v. Light Co., supra.

Another requirement essential to the application of the rule is that plaintiff's pleading must be such as to advise his adversary that the rule may be invoked. In the case under consideration plaintiff's pleading must be such as to *put the defendant on notice that he does not intend to be restricted to the specific allegation of defectiveness, "old and worn out," and that he is relying upon the more general allegation of defectiveness in the trolley wire.*

It is stated by the Court of Civil Appeals in the certificate that there is but a single clause, if any, indicating a want of such knowledge or an inability to prove any one of the numerous specific allegations of negligence on the part of the company, and thus bring the case in harmony with Simmons v. Terrell Electric Light Co., supra.

The allegations of negligence in this case are strikingly similar to plaintiff's allegations in the Simmons case. Plaintiff in the case at bar appears to have used the allegations there in question as a pattern for his own. The allegations of negligence in the Simmons case in part are:

"Because * * * it was an old wire and permitted to break and hang down, or because of the weight it was forced to support, or because * * * the limbs of trees brushed against the wires and wore them and broke them, or because * * * such wires were not properly supported, *or from some other reason to the plaintiff unknown,* the wire was down over the

sidewalk, or fell over the sidewalk in such manner as to injure * * * plaintiff." (Italics ours).

Judge Nickels, speaking for the Commission in the Simmons case, after reviewing the authorities in different jurisdictions as to the conditions necessary to warrant application of the rule, says:

"Here there is a plain notification that plaintiff does not intend for his claims or his general charge to be restricted to any one or all of the matters more specifically averred. He did not exactly choose and mark off the field of battle, and defendant had no right to indulge a supposition that he would yet do so."

No question is made in the certificate that plaintiff did not make the necessary allegations as to defendant's control and management of its equipment, and it appears his allegations in this particular are sufficient. It appears from the certificate that negligence is alleged in the following particulars: (a) in failing to have a substantial trolley wire that would not break; (b) in failing to have poles of sufficient strength to stand the weight of the wire; (c) in failing to keep the wires a sufficient distance from the trolley wire; (d) in failing to have the street car so protected as to keep the wire from being thrown into it. Sub-section (e) to which paraticular attention is directed by the certificate, alleges substantially that defendant was using a defective wire; that it was old and worn out, *or defective in some manner unknown to plaintiff;* that the trolley wire broke because defective, and came in contact with plaintiff injuring him; and that defendant in using and maintaining a defective trolley wire was negligent. It is true the "field of battle" marked off in this case is more restricted than in the Simmons case, but the notice pleaded alternatively that he will not be confined to the allegation of the defectiveness made specific, is plainly given. Plaintiff pleads alternatively the more general allegation of defectiveness *"in some manner unknown to plaintiff"* and thereby advises defendant in effect that if he fails to prove the defect specifically averred, that nevertheless he intends to prove his alternative allegation of defectiveness. Plaintiff, by relying upon the allegation of defectiveness did not thereby any more deprive himself of the benefit of the rule of evidence under discussion than plaintiffs did in the cases above cited involving respectively, defective spark arresters, defective car doors, and a defective machine that started automatically from some unexplained reason. It has already been pointed out that in the list of cases cited

involving the allegations of defectiveness the rule is held applicable by the Supreme Court.

Judge Nickels further says:

"We can perceive no just reason for denying that res ipsa speaks that inference of negligence essential to remission of plaintiff's cause to the jury. See Texas & N . O. Ry. Co. v. Crowder, 63 Texas, 504; McCray v. Gulf H. & S. A. Ry. Co., 89 Texas, 168, 34 S. W., 95; Washington v. Missouri K. & T. Ry. Co., 90 Texas, 314, 38 S. W., 764; Gleeson v. Va. Midland Rd. Co., supra, (140 U. S., 435), and cases there cited; cases cited in notes in 12 L. R. A., 189, 34 L. R. A., 557, 6 L. R. A., (N. S.) 800, 12 L. R. A. (N. S.) 721, 16 L. R. A. (N. S.) 527, 24 L. R. A. (N. S.) 139, 43 L. R. A. (N. S.) 591." The cases cited abundantly support the holding.

In the Simmons case it is stated that the defendant in error relied for support of its contention that the "res ipsa" rule was not applicable under the pleadings upon Lone Star Brewing Co. v. Willie, 52 Texas Civ. App., 550, 114 S. W., 186; Cecil & Co. v. Stamford Gas & Elec. Co., 242 S. W., 536; Davis v. Castile (Com. App.), 257 S. W., 870; and Wichita Valley Ry. Co. v. Helms, 261 S. W., 225. Appellant in the case at bar relies for support of its same contention upon the same cases. These cases are distinguished by Judge Nickels in the following language:

"The averments here are made disjunctively with a final one in these words: 'Or from some other reason to the plaintiff unknown.' * * * In our opinion the pleading is not one of 'specific averments' within the doctrines urged, and reason for application of those rules (see Johnson v. Gulf H. & N. Ry. Co., 66 S. W., 906) does not exist."

It is clear that the pleading and facts certified as to the circumstances surrounding the occurrence resulting in plaintiff's injury are such as to make applicable the rule in question. The first question is therefore answered in the affirmative.

Question No. 2 reads:

"Did the court in view of the evidence and of the character of the use to which the trolley wire was put, and the force to which it was subjected, commit error in refusing to define the terms 'substantial' and 'defective.' "?

It appears from the first section of the certificate that in Special Issues Nos. 3, 4 and 5 the court submitted the questions of whether the trolley wire broke on account of failure of defendant to have a substantial trolley wire at the place in question; and the related issues of whether such failure was

negligence, and whether such negligence was the proximate cause of plaintiff's injuries. In Special Issues Nos. 6, 7 and 8 the court submitted the question of defective trolley wire and the two related issues of negligence and proximate cause.

That part of the certificate bearing directly upon the foregoing question follows:

"Appellant seasonably objected to the court's charge because the term 'defective' was not defined. The objection, if well taken was not corrected by any definition of the terms 'substantial or defective,' and appellant has duly assigned error to the failure. In the case of Washington Fidelity National Co. v. Williams, 49 S. W. (2d) 1093, it was held by Section A of the Commission of Appeals that it was error for the court to refuse to define, among other terms, the terms 'personal bodily injuries.' The opinion, written by Justice Sharp, was especially approved by the Supreme Court."

The court deemed it advisable "in view of this decision," to certify the question.

Article 2189 R. S. 1925, in part, reads:

"In submitting special issues the court shall submit such * * * definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

6 The quoted portion of the statute has been construed in many cases. No clearer test as to when terms used in a charge submitting special issues should be defined can be found than is laid down in that part of the language of the statute itself, which reads: "The court shall submit such * * * definitions of legal terms as shall be necessary to enable a jury to properly pass upon" the issues. In Owens v. Navarro Co. Levee Improvement District, No. 8, et al. (Com. App.), 115 Texas, 263, 280 S. W., 532, Judge Bishop, speaking for the Commission, says:

"It is only when it is necessary to enable the jury to properly pass upon and render a verdict on the issues submitted that the court is by statute required to submit explanations in regard to special issues. If the issues submitted are such that explanations are not necessary, none should be given."

In Robertson & Mueller v. Holden (Com. App.), 1 S. W. (2d) 570, Judge Speer, speaking for the Commission, says:

"In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable

necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined."

In the case referred to in the certificate as making it advisable to certify the question, Washington, etc., Co. v. Williams, supra, (33 S. W. (2d) 796; 49 S. W. (2d) 1093) the suit was upon an insurance policy. The policy coverage was for losses specified in the policy resulting "directly and independently of all other causes, effected * * * through external, violent and accidental means* * *." The foregoing terms, being a part of the stock phraseology used in accident insurance policy contracts, have come to have a fixed meaning in law; and in the case referred to it was necessary, in order that the jury might not speculate beyond the boundaries fixed by these respective meanings, to define the terms. In the cases quoted from above the true test as to when definitions should be given in the court's charge was stated, and both opinions were cited by Judge Sharp in the case referred to in the certificate.

In Dallas Ry. & Terminal Co. v. Bankston (Com. App.), 51 S. W. (2d) 304, Justice Sharp, then Commissioner, wrote the opinion, the holdings of which were approved by the Supreme Court. In that case complaint was made that the trial court erred in failing to define the terms "vigilant watch" and "in the shortest time and space possible." Judge Sharp there took occasion to say:

"The rule is now established in this State that it is the right of a party, upon properly presenting the matter, to have proper definitions and explanations of such legal terms, if used, as 'ordinary care,' 'negligence,' 'proximate cause,' 'unavoidable accident,' 'contributory negligence,' and like terms given by the trial court to the jury, and failure to do so constitutes reversible error," citing numerous cases, including Robertson & Mueller v. Holden and Owens v. Improvement District, supra.

The opinion states further that "these terms, if used, under the rule announced by the foregoing statute (Article 2189) and decisions, should be defined, if requested. Continuing, the opinion states, however, that "the terms 'vigilant watch' and 'in the shortest time and space possible' are not such legal terms that call for such explanations and definitions thereof to enable the jury to properly pass upon and render a verdict on such issues." They were held to be ordinary words of simple

meaning that are commonly used, and that any ordinary person would readily understand; and further, that to require explanations and definitions of terms already clear, would lead to an absurdity and defeat the general purpose for which article 2189 was enacted.

The terms "defective" and "substantial," as used in this case, are in that same class of ordinary simple words which definitions would not further simplify to the jury.

It was not error for the trial court to refuse defendant's request to define those terms. Question No. 2 is answered in the negative.

Opinion adopted by the Supreme Court April 17, 1935.

Rehearing overruled May 22, 1935.