### MONTGOMERY WARD & CO. et al. v. SCHARRENBECK et ux.

#### No. 2554.

Court of Civil Appeals of Texas. Eastland.

Jan. 3, 1947.

Rehearing Denied Feb. 21, 1947.

Woodruff & Holloway, of Brownwood, for appellants.

E. M. Davis and Wilkinson, Johnson & Griffin, all of Brownwood, for appellees.

GRAY, Justice.

Appeal from the District Court of Brown County.

From appellants' brief, we quote the following statement of the nature and results of the suit:

"G. W. Scharrenbeck and wife, as plaintiffs, instituted this suit against Montgomery Ward & Company, a corporation, and Marcus H. Sessions, to recover the alleged value of a dwelling house and the furniture and fixtures and other personal property therein situated, alleged to have been destroyed by fire as the result of negligence on the part of Sessions, as an employee of Montgomery Ward & Company, in repairing a kerosene hot water heater situated in said house. Plaintiffs admitted having collected $1,000 as insurance upon said property and therefore that the defendants were entitled to a credit in said amount.

"Dubuque Fire & Marine Insurance Company intervened, setting up that it had paid to the plaintiffs the sum of $1,000 by virtue of a policy of fire insurance covering the property and that it was subrogated to the plaintiffs' cause of action to the extent of the amount so paid. Intervenor adopted the allegations of the plaintiffs' with respect to the alleged values of the property and the alleged negligence on the part of the defendants as the proximate cause of the fire.

"Trial was before a jury, resulting in judgment in favor of the plaintiffs against the defendants in the amount of $4,177.50 and in favor of the intervenor against the defendants in the sum of $1,000, from which the defendants have prosecuted this appeal."

The parties will be referred to as in the trial court.

The facts reveal that Montgomery Ward & Company had sold the heater in question to Charles Willingham, Scharrenbeck's predecessor in title to the buildings and the land on which same were situated. Willingham had used said heater for a period of more than 16 months without mishap or trouble. Upon sale of said premises to Scharrenbeck, Willingham vacated and within a very few days, Scharrenbeck moved in. The said heater had been temporarily disconnected. It was February, 1943, and the weather was cold, accompanied by high winds from the north. Upon moving in, Scharrenbeck was unable to light the heater and called a plumber, Mills, to adjust it. After considerable inspection and examination, Mills confessed that he did not understand that type of heater and advised Scharrenbeck to contact Montgomery Ward & Company, who had sold the heater and maintained a service department for appliances of said character so sold by them. Scharrenbeck did as Mills advised. Said heater had been sold with a guaranty of free service for 16 months, which period was found to have expired. Whereupon, said company agreed for a certain compensation to be paid by Scharrenbeck to send their expert repair man, defendant Sessions, out to adjust, regulate or repair said heater. During the dis-

cussion, Scharrenbeck suggested that it might be necesary to buy some new parts for it, but was assured by the Company that due to the short time same had been in use, no replacements would be required.

Sessions arrived at the scene about 1:30 or 2 o'clock p. m. The residence and connecting garage were almost entirely of stone and cement and of good construction. The roof was of the best shingles obtainable. The said heater was installed in the bath room, and was fueled by a pipe through the rock wall connecting with a fuel tank outside. It was equipped with a constant-level valve to regulate the supply of fuel, a secondary air adjustment, draft regulation, and thermostat which functioned when the water reached a certain temperature. A hollow iron pipe five inches or more in diameter extended through the heater through the ceiling and 18 to 24 inches above the roof. Below the burner was a burner pot from which it was lighted. Sessions soon discovered that the fuel would not, or did not flow through the constant-level cavity to the burner. He further found that there was corrosion of some of the parts and had Scharrenbeck bring him a pan of kerosene and some rags. He removed some of the parts, cleaned and dried them, then put them back in place and found that the fuel flowed, after which, he told Scharrenbeck that the heater was ready to be lighted. But Sessions then stated that he did not know how to light it. Scharrenbeck said that he knew. Full instructions for lighting the burner were on a metal plate on the heater, which Scharrenbeck followed, defendants' witnesses agreeing that the said burner was correctly lighted. The evidence showed that in this type of heater, a few minutes were required after lighting for the burner to begin to generate, and that when generating, it would produce a blue flame two or three inches in height. In this case, it was in evidence that the burner did not generate, and instead of a blue flame, it produced a red or straw colored flame, which extended several inches up into the flue pipe. The water failed to heat, and after watching it for approximately two hours, Sessions turned on more heat, thus increasing the red flame. In approximately two minutes, the roof of the house was on fire, and the house, its contents and the garage were practically a total loss.

Plaintiffs pleaded as follows:

"The aforesaid fire resulting in complete destruction of plaintiffs' residence, garage and most of their contents, was proximately caused by each of the following negligent acts of defendants, to wit:

"(a) Failure to regulate said heater and burner so as to prevent it from setting said house on fire.

"(b) Failure to take the necessary precaution to prevent the fire and heat of said heater and burner from escaping to plaintiffs' house and setting it on fire.

"(c) Failure to have sufficient and adequate means of controlling the fire and heat in said heater and burner to prevent same from spreading to plaintiffs' house and setting it on fire.

"(d) Failure to keep a proper watch on said heater and burner and the fire therein to prevent the same from spreading to plaintiffs' house and setting it on fire.

"(e) Defendant, Montgomery Ward & Co., Inc., was guilty of negligence proximately causing said fire and plaintiffs' resulting damages by sending defendant, Marcus H. Sessions, to plaintiffs' house to repair and place in operating condition said heater and burner, well knowing the said Marcus H. Sessions was not qualified to repair and place same in operating condition, proximately resulting in the destruction of plaintiffs' house, garage and most of their contents by fire.

"Plaintiffs say that, if they be mistaken in their allegations of negligence proximately causing the destruction of their house, garage and contents by fire as set out in Paragraph VII above, then in the alternative they say, that defendants were guilty of negligence proximately causing the destruction of plaintiffs' property in the following particulars, to wit:

"Defendant, Marcus H. Sessions, sent to plaintiffs' premises as an expert by defendant, Montgomery Ward & Co., Inc., at a charge to plaintiffs of $1.00 per hour plus mileage, was in complete and exclusive control of said heater and burner as an ex-

pert, from the moment he started working on same, held out by defendants as a man skilled in the knowledge of how to handle, repair and place said heater and burner in good working condition and as such, said defendant, Marcus H. Sessions, was possessed with the peculiar knowledge as to what prevented said heater and burner from working and what was necessary to do to them to make them work, plaintiffs having no knowledge whatsoever of said heater and burner, what was wrong with them or what was necessary to do to them to make them work, and being in possession of said heater and burner as an expert, the defendant, Marcus H. Sessions, negligently did something to said heater or burner peculiarly within his knowledge which he should not have done and which caused the same to set fire to plaintiffs' house, or negligently failed to do something to said heater and burner which as an expert he should not have done and which caused the same to set fire to and destroy plaintiffs' property."

The defendants answered by numerous special exceptions, pleaded assumed risk on the part of defendant, specially denied any act of negligence on the part of defendants causing or contributing to the burning of the plaintiffs' property, and further pleaded that said fire was caused by a defective flue, and in the alternative that said fire was the result of an unavoidable accident. Defendants further filed objections to the court's charge, the substance of which very closely coincided with matters raised by exceptions to the pleadings.

We deem it unnecessary here to discuss each exception raised to the pleading. They have all had careful consideration. But we think that, due to their similarity, they may be summarized into a few basic objections, namely, that plaintiffs had not sufficiently pleaded negligence on the part of defendants; were not specific as to acts alleged or omitted constituting negligence; did not allege or plead any facts showing a duty on the part of Sessions to do or perform any act or thing beyond what he did; that the petition failed to allege facts showing that Sessions was not qualified to adjust or repair said heater; and that the alternative pleadings were too vague, in-

definite and uncertain to charge negligence, were wholly speculative and alleged no wrongful act or omission on the part of Sessions constituting negligence. By reference to the pleadings set out above, it will be seen that plaintiffs alleged (a) failure to regulate said heater and burner so as to safeguard against a fire; (b) failure to take necessary precautions to prevent the fire and heat from said heater and burner from escaping to said house and setting it on fire; (c) failure to have sufficient means of controlling the fire in said heater and burner from spreading to the house; (d) failure to keep a proper watch on the heater and burner and the fire therein to prevent same from spreading to the house; (e) negligence of Montgomery Ward & Company in sending Sessions to make such repair and adjustment, well knowing that Sessions was not qualified to repair and place said heater in operating condition, and in the alternative that Sessions was sent as an expert to do said work, was in complete and exclusive control, held out as a man skilled in said line of work, had superior and peculiar knowledge of what was necessary to be done, lack of knowledge of plaintiffs, and negligence of Sessions in doing or failing to do something that resulted in the fire and consequent damage.

We do not believe that the pleadings were subject to the objections raised. It is true, a duty on the part of Sessions was not specifically pleaded. But where relationship and other pertinent facts are pleaded, a duty will be implied. Many authorities might be cited to sustain the rule. Here was a kerosene heater sold by Montgomery Ward & Company to a customer. The Company knew, as every one knows, that when improperly handled, adjusted or repaired, it became a potentially dangerous instrumentality. It is a matter of common knowledge that kerosene is highly inflammable and dangerous. Scharrenbeck knew nothing about it and testified that he was afraid of it. It was of such unusual type and construction that even Mills, the plumber of many years' experience and plumbing inspector for the City of Brownwood, knew nothing about it. Its mechanism was wholly within the knowledge of the defend-

ants alone, in so far as the parties hereto are concerned. For a certain consideration, the Company agreed to make the necessary adjustment and sent their expert Sessions to do the work. It could hardly be denied that Sessions was impliedly charged with the duty of repairing and adjusting said heater in such efficient way as to make it operate as it should. We further believe that he was impliedly charged with the duty of keeping a proper watch on the fire in the burner, and to exercise such care and precaution as not to bring disaster to plaintiffs' property. We think that negligence was sufficiently and adequately pleaded. We further think that in the alternative pleadings, sufficient facts were alleged to invoke the rule of res ipsa loquitur as defined and applied by the Courts of Texas, as will be hereinafter further discussed. We, therefore, find no error in the overruling of said exceptions by the trial court.

In response to special issues, the jury found the following facts: (1) that while attempting to repair said heater, defendant Sessions failed to keep a proper watch on the fire therein; (2) that in failing to keep a proper watch on the fire in said heater, said Sessions was guilty of negligence; (3) that such negligence was a proximate cause of the fire that destroyed the house; (4) that Sessions was in full control of said heater and burner during the time that he was attempting to place same in good working condition; (5) that while in control of said heater and burner, Sessions did something to said heater and burner, which a man in his position would not have done under the same or similar circumstances; (6) that what Sessions so did to said heater and burner was negligence; (7) that such negligence was the proximate cause of said fire; (8) that Sessions was guilty of negligence in failing to regulate said heater and burner so as to prevent it from setting fire to plaintiffs' house; (9) that such negligence was a proximate cause of the fire which destroyed plaintiff's house; (10) that the flue in plaintiffs' house immediately prior to the fire was not defective; (11) that the person who constructed said flue was not guilty of negligence in constructing same in the manner in which it was constructed; (2) that the fire which destroyed said house was not the result of an unavoidable accident.

Other special issues submitted, related to the matter of values and damages, but no question as to the amount of damages is involved in this appeal. At the conclusion of the evidence, the defendants moved for an instructed verdict for the alleged reason that the evidence wholly failed to show any negligence on the part of defendants, or any act or omission on the part of Sessions proximately causing said fire. The motion was overruled.

■ From the pleadings and issues submitted, it will be seen that plaintiffs' theory as to the cause of the fire was traceable to some negligent act or omission of Sessions with reference to the burner, while defendants' theory was that the flue was defective by reason of being improperly constructed to afford proper insulation of the adjacent parts of the ceiling and roof against heat from the flue pipe. It will be noted that the jury findings supported plaintiffs' theory of the case. We think that said findings were amply supported by a preponderance of the evidence. Without rehearsing in detail all the evidence, which would unduly prolong this opinion, we call especial attention to the fact that for approximately two hours of operation, said burner failed to generate and produce a blue flame. From the evidence, the jury was justified in concluding, as they must have concluded, that such failure to generate was due to lack of proper air-mixture in the burner. As stated above, said burner was equipped with a secondary air adjustment device. It was in evidence that a proper air-intake was necessary to produce a blue flame. Sessions testified that he did nothing to the burner, except to clean the corroded parts. As an expert and in complete control, the failure of the burner to generate for two hours certainly was sufficient to put him upon notice that something else was necessary to be done to make it function properly. It was admitted that the heat from the red flame was much greater in the upper part of the heater than in the lower cavity, and

that the flame was rather high in the flue pipe. Sessions failed to discern the lurking danger, but increased the heat and within two minutes the roof was on fire, the flames being accelerated by a strong north wind to such extent that control of the fire was impossible. Did the acts of Sessions "speak negligence"? We think they did.

■ By its finding that the flue through which the vent pipe extended was not defective, the jury rejected appellants' theory as to the cause of the fire. The evidence was that a wide metal plate with an opening sufficiently large for the vent pipe was nailed to the ceiling. This was surmounted by what they called a metal collar. At the roof there was a metal rain proof. The vent pipe extended two feet or less above its exit through the roof, but was enclosed by another and larger metal pipe, and on the top was a metal cap. A significant fact, as shown by the evidence, was that the fire when first discovered, was on the roof about two feet from the flue, thus indicating that the flame shot out through the top of the flue and was whipped by the strong wind to the roof setting it on fire. This refutes appellants' plea as to lack of proper insulation of the flue as against heat. Appellants insist and cite authorities to the effect that where two opposing theories as to damage are presented, each as plausible as the other, no recovery may be had. The rule has no application here. Upon sufficient evidence, the jury found in favor of appellees' theory, and on sufficient evidence rejected the theory of appellant.

What we have said above, disposes of appellants' first, second, and third points which complain of the alleged error of the trial court in overruling their special exceptions to the pleading.

■ The fourth point is that the court erred in not instructing the jury to find for the defendants. We think that the evidence raised disputed questions of fact and that no error was committed in refusing appellants' motion for an instructed verdict.

The fifth point alleges error by the trial court in submitting special issues 1, 2, 3 and 3A to 3F (See jury findings 1 to 9

above). We think that said issues were sufficiently raised by the pleadings and the evidence, and overrule the point.

■ Appellants' sixth point alleges error by the trial court in rendering judgment for plaintiffs and intervenor, for the reason that the evidence failed to show any act of Sessions, or any breach of duty on his part, constituting either negligence or proximate cause of the fire. As has been stated, Sessions testified that he did nothing to the heater, except to clean some corroded parts and thus secure a flow of kerosene to the burner. But did his employment and duty end with that? Having accomplished that much, was it not also a part of his employment and duty to make said burner and heater function properly? He was not sent out merely to regulate the flow of the oil. Indeed, it was not known at that stage of the proceedings what the trouble was. It was incumbent on him to regulate the burner, the air-draft and air-intake, and to do any and all other things necessary to make said heater generate by producing a blue flame and to heat the water. Defendants should not be permitted to defeat a recovery by simply showing performance of a minor part of his employment, while neglecting the major things which resulted in the destruction of plaintiffs' property. The jury was justified in finding that Sessions was guilty of acts of omission from his own testimony. Furthermore, with a red flame extending high up into the vent pipe and the water not heating, we think the jury was justified in concluding that Sessions committed an act of negligence in turning on more heat. The fact that the entire house was soon enveloped in flames furnished evidence that defendants did not refute or explain. Appellants' sixth point is overruled.

There is sharp controversy between the parties to this appeal as to whether the rule of evidence of res ipsa loquitur is applicable to this case, appellees contending that it is and appellants equally insistent that it is not. Most jurisdictions recognize and apply the rule, while a few do not. We quote from 45 C. J. page 1205, section 772. "The application of the doctrine is predicated upon the superior knowledge of defendant as to the cause

of the injury under the particular circumstances involved and the failure on the part of defendant to explain, and in this connection, it may be noted that the applicability or operation of the doctrine is sometimes terminated by the presence or availability of direct evidence upon the issue."

Section 773 following, elaborates on the matter of superior knowledge of the defendant, his management and control of the agency causing the injury, plaintiff not being in position to show the particular circumstances which caused the offending instrumentality to operate to his injury, and, therefore, defendant should be required to produce the evidence in explanation. The doctrine is recognized in Texas, and in the Supreme Court case of Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 969, 160 A.L.R. 1445, Judge Brewster concisely states the conditions under which the rule may be invoked: "Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

In Penrod Drilling Co. et al. v. Silvertooth et al., Tex.Civ.App., 144 S.W.2d 335, 337, writ of error dismissed, Judge Monteith defines the rule as follows: "In order to invoke the principle of doctrine of res ipsa loquitur, the particular thing causing an injury complained of must be shown to be under the management of the defendant or its servants and the accident be shown to be such as in the ordinary course of things does not happen if those who have the management or control use proper care. In a proper case for the application of the rule where the physical facts involved in 'an accident are of such a character as to 'compel an inference that it resulted from 'negligence, such facts are themselves evidence of negligence, and it is incumbent

upon the defendant, if he wishes to avoid the effect of the doctrine, to introduce evidence to explain, rebut or otherwise overcome the presumption or inference that the injury complained of was due to negligence."

Again, in the case of Wichita Falls Traction Company v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 664, the Supreme Court in answer to certified questions, says: "The authorities are not in accord as to the evidential effect of the application of the rule, due in some measure to the use of the terms 'presumption' and 'inference' loosely and indiscriminately: 45 C.J. p. 1198. It is now well settled, however, in this state that in a proper case for the application of the rule the fact of the occurrence warrants an inference of negligence, but does not compel it; that the presumption created by the happening, whether termed a presumption or an inference, is rebuttable. The effect of the application is not to shift the burden of proof to the defendant, but only the burden of going forward with the evidence. It is stated in 45 C.J. page 1219, that the general rule as affecting burden of proof is that where plaintiff has established a presumptive or prima facie case of negligence, by virtue of the doctrine of res ipsa loquitur, it is incumbent upon defendant, if he wishes to avoid the effect of the doctrine, to introduce evidence to explain, rebut, or otherwise overcome the presumption or inference that the injury complained of was due to negligence. The rule thus stated is firmly established in this state. * * *

"It is evident from the rule as stated, and is held to be a fact necessary to invoke the rule, that the thing which caused the injury complained of must be under the management or control of defendant, and the accident must be such as in the ordinary course of things does not happen if those who have the management or control use proper care. * *. *

"It is apparent from the principles recognized and established by the Supreme Court as pointed out in the foregoing discussion of the nature and effect of the rule as interpreted by the decisions of this

state that there are several conditions essential to make applicable the 'res ipsa' rule. An essential allegation necessary to warrant its application in a case in which defectiveness in equipment is alleged is that the management and control of the equipment which produced the injury shall be with the defendant exclusively. The theory is that plaintiff is not in a position to show the particular circumstances which caused the equipment to operate to his injury, and that defendant possesses the superior knowledge or means of information as to the cause of the defect, if any; and should therefore be required to produce the evidence in explanation. * * *

"Another requirement essential to the application of the rule is that plaintiff's pleading must be such as to advise his adversary that the rule may be invoked. In the case under consideration, plaintiff's pleading must be such as to put the defendant on notice that he does not intend to be restricted to the specific allegation of defectiveness, 'old and worn out,' and that he is relying upon the more general allegation of defectiveness in the trolley wire."

From 30 Tex.Jur., page 802, Sec. 129, we quote "In certain classes of cases a presumption will be indulged that the defendant ought to have foreseen and averted the calamity. 'While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred.' To give rise to this presumption or inference, the evidence must show;

"(1) that the injury or damage was the result of an act or omission of the defendant,

"(2) that an instrumentality by which the harm was caused or produced was in the exclusive possession of the defendant, and

"(3) that the calamity was one which is ordinarily averted by the taking of customary precautions or preventive measures. 'Where the particular thing causing the injury has been shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.'

"The situation which thus generates a presumption or inference against the defendant is described by the words 'res ipsa loquitur,' meaning 'the thing speaks for itself.' This expression, it has been said, 'is merely a short way of saying that the circumstances attendant upon accident are themselves of such a character as to justify a jury in inferring negligence as a cause of the accident.' "

In Roberts v. Texas & P. Ry. Co., 142 Tex. 550, 180 S.W.2d 330, 331, it is said: "As early in our judicial history as Chief Justice Gaines' opinion in Washington v. Missouri, K. & T. R. Co. of Texas, 90 Tex. 314, 38 S.W. [764,] 765, it was stated as a rule of law that 'where the particular thing causing the injury has been shown to be under the management of the defendant, * * *, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care.' Chief Justice Gaines, in applying the rule in the Washington case in which the evidence of negligence on the part of the railway company was wholly circumstantial, said: 'But, while the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred.' In the very recent case of Burlington-Rock Island R. Co. v. Ellison, [140 Tex. 353, 167 S.W.2d 723,] this Court, speaking through Justice Critz, held that to hold that plaintiff is required to exclude the probability that the accident might have occurred some other way

would impose upon him the burden of establishing his case beyond a reasonable doubt."

The rule or doctrine of res ipsa loquitur is thus defined by the Supreme Court of the United States in the case of San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680, 684: "* * * rightly declared and applied the doctrine of res ipsa loquitur, which is, when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care * * *".

■ From the authorities quoted, we find that certain elements must be present to invoke the rule. (a) "The character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred." (b) "The thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

■ Applying the rule to the facts in this case, we find from the evidence that the heater in question had been in operation for more than 16 months without trouble or repair. When Scharrenbeck suggested to Montgomery Ward & Company that it might be necessary to buy some parts, he was advised that none would be required. After Sessions had regulated the flow of oil into the burner, he stated that it was ready to be lighted. All the evidence indicated that there were no basic defects in said heater and that proper regulation was all that was necessary. We think the jury was justified in concluding, as they must have done, that from "the character of the accident" and "the circumstances attending it", that Sessions was guilty of negligence, and without which, the fire would not have occurred. As to the second element, the jury found in response to a submitted special issue that Sessions was in full control during the time he worked on said heater. Thus the facts seem clearly to bring this case under the rule.

If we be correct in the conclusion stated, then the plaintiffs made a prima facie or presumptive case, and it became incumbent on the defendants to rebut or explain. We think they did not discharge this obligation. Concededly, the heater was not inherently defective. If defendants sought to rely on their pleaded defense that the flue was defective, then they are foreclosed by specific findings of the jury that the flue was not negligently constructed and was not defective at the time of the fire. If they relied on the testimony of their expert witness Wells to the effect that accumulated soot in flues sometimes caused fires in the North, it may be answered that there was no evidence whatsoever that there was an accumulation of soot in this particular flue. But if Sessions had a suspicion that soot was present in the flue, was he not guilty of negligence in not making an investigation? We conclude that the prima facie or presumptive case so made and not sufficiently rebutted or explained entitled plaintiffs to recover.

■ Appellants insist that appellees having alleged specific grounds of negligence, they cannot invoke the rule of res ipsa loquitur, but must prove the specific acts alleged. We cannot agree with this contention as to the case under review. Plaintiffs' petition consists of two counts, the first alleging negligence in several particulars, and the second, an alternative count in which defendants were clearly put upon notice that plaintiffs would not be limited or restricted to their special pleas of negligence, and in which alternative count, general negligence was alleged in such way as to conform to the hereinbefore quoted definitions of res ipsa loquitur. It is true that said rule was not named therein specifically, but such was not required. The courts of Texas have applied the rule in many cases where the term was not specifically mentioned by name. See Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445; Wichita Falls Traction

Company v. Elliott, 125 Tex. 248, 81 S.W. 2d 659.

It would prolong this opinion to an undue length to attempt a review of all the authorities cited by the parties hereto and the many other applicable cases not cited. Wichita Falls Traction Co. v. Elliott, supra, gives an interesting discussion of, among other phases, the pleadings. Not cited is the case of Gulf, C. & S. F. Ry. Co. v. Dunman et al., Tex.Com.App., 27 S.W.2d 116, 72 A.L.R. 90, relating to the alleged negligent operation of a train, and in which the rule was applied. Honea v. Coca Cola Bottling Co., supra, in which the rule was applied to the alleged negligent bottling of a drink. Penrod Drilling Co. et al. v. Silvertooth et al., Tex. Civ.App., 144 S.W.2d 335, 338, is excellent authority for the judgment rendered in this case by the trial court. We quote briefly: "Penrod Drilling Company having taken possession and control of the drilling operations, and the evidence having conclusively shown that they were performing the work at the time of said accident, the court was amply justified in rendering judgment against Penrod Drilling Company and the parties who composed such partnership."

A careful study of cases in which res ipsa loquitur was not applied, will reveal that such cases may be differentiated from the instant case on the facts, and that control of the instrumentality by the alleged wrongdoer was too remote.

■ In the seventh and final point, complaint is made as to the alleged error of the trial court in excluding from the evidence, a report made to his Company by the witness Wells as to what he found at the scene of the fire about one year after it occurred. On cross-examination, it was developed that the witness had not testified as to said report on either of the two previous trials of the case. He ad- mitted that appellants' attorneys knew about the report. Questions by appellees' counsel as to why he had not testified as to said reports and its contents at the previous trials, were construed by appellants' counsel as an attempt to discredit said witness as to his evidence on direct examination. Being no part of the res gestae, self serving and hearsay as to plaintiffs, to have been admissible, it must have been consistent with his oral testimony and an effort must have been made by plaintiffs to discredit and impeach him, 45 Tex.Jur. pages 174 to 177. But see Section 295 of the cited text where it is said: "In the absence of a proper predicate in an assault on the credibility of the witness, evidence that prior to the trial, he made statements substantially in accord with his testimony is inadmissible. The only ground for admitting the former consistent statement is its tendency to support the denial of the witness that he made the statement imputed to him, and where this ground is wanting, the alleged consistent statement is regarded as pure hearsay."

■ The alleged report is not brought forward into the record by bill of exception or otherwise, and, therefore, we are not in position to consider it. However, in the presence of the jury, plaintiffs' counsel vigorously denied any attempt or intent to discredit or impeach said witness, but based their objection to admitting said report on the ground that it was not admissible for any purpose. Even if the trial court committed error in rejecting it, we think it was error of such character as not to justify a reversal of the case. From the pleadings, the evidence and findings of the jury, and from the record as a whole, it is our considered opinion that the judgment of the trial court may be sustained upon either count of the petition.

The judgment of the trial court is affirmed.