A. M. BILLINGSLEY ET AL. v. TEXAS & NEW ORLEANS RAILROAD COMPANY.

No. 7153.   Decided April 13, 1938.
Rehearing overruled May 4, 1938.
(115 S. W., 2d Series, 398.)

*Howth, Adams & Hart,* of Beaumont, for plaintiff in error.

All the attendant facts and circumstances in evidence showing that defendant was operating its train through the town of Waller with the door of one of its refrigerating cars unfastened, open and swinging out a distance of several feet from the side of the car, and that said swinging door struck and killed plaintiffs' son, who was standing near and at a reasonably safe distance from the track, waiting for the train to pass, so he could cross the track, raised an inference of negligence on the part of defendant, and justified the application of the doctrine of res ipsa loquitur, in that, the defendant had failed to introduce any evidence in explanation of the condition of said door, and of such circumstances that the death would probably not have occurred if defendant, who was in exclusive charge of the train had fastened and inspected said door at the proper time and place, and shows that the accident arose from want of care. Missouri, K. & T. Ry. Co. v. Scarborough, 68 S. W. 196; Washington v. Missouri, K. & T. Ry. Co., 90 Texas 314, 38 S. W. 764; Missouri, K. & T. Ry. Co. v. Jones, 103 Texas 187, 125 S. W. 309.

*Baker, Botts, Andrews & Wharton,* of Houston, and *Duff & Cecil,* of Beaumont, for defendant in error.

As plaintiffs plead specific acts of negligence on the part of defendant and as the evidence was limited to proof that deceased's death was probably caused by an open door on a refrigerator car, without showing how said door came to be open and what caused it to swing out, who owned the car, where it came from and where it was going, and other facts which might infer that defendant or its servants knew the condition of said door before the accident, or by the exercise of reasonable care could have known of it, the doctrine of res ipsa loquitur does not apply and defendants should have had an instructed verdict. Davis v. Castile, 257 S. W. 870; Brigman v. Halt & Bowers, 32 S. W. (2d) 220; Cecil & Co. v. Stamford Gas & Elec. Co., 242 S. W. 536.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

A. M. Billingsley and wife, father and mother of the deceased, A. T. Billinsgley, and Alfred and Pauline Billingsley, brother and sister of the deceased, sued the T. & N. O. Ry. Co. to recover damages for his death. Upon appeal from a judgment in favor of plaintiffs the Court of Civil Appeals rendered judgment reversing and rendering the cause in favor of defendant. 94 S. W. (2d) 268.

Plaintiffs allege that the train was in charge of defendant exclusively; and that A. T. Billingsley, while standing at a customary and reasonable distance from the railroad track on one of the streets of the town of Waller waiting for a train to pass, was, through the negligence of the defendant, struck by an open swinging door of one of the cars of the train and killed. They allege substantially that defendant failed to properly close and fasten the door of one of its cars before it was connected with the train, or thereafter failed to close and fasten it, and failed to use ordinary care to inspect the car doors for the purpose of discovering whether they were closed and properly fastened; that defendant negligently operated its train with the door of one of its cars extending out several feet from the body of the car, knowing that the door "if permitted to swing outward in passing the said town of Waller, would probably violently strike" persons on the street while waiting the passing of the train. The allegations are brief and are substantially identical with the allegations of plaintiff in the case of Texas & Pacific Ry. Co. v. Greene, 291 S. W. 929, Id. (Com. App.)

299 S. W. 639. Defendant demurred generally to the allegations, interposed a general denial, and pleaded specific acts of contributory negligence on the part of the deceased in standing within a short distance of the track while a train was passing, in failing to observe the approach of the train, and in placing himself in a position of danger and not removing himself therefrom.

The opinion of the Court of Civil Appeals sets out the following facts:

"The railroad track of appellant, Texas & New Orleans Railroad Company, runs east and west through the town of Waller, Waller County, Texas. The depot is on the south side of the track and the Goodrich hotel on the north side. About 9 o'clock P. M. of the 27th day of May, 1933, for the purpose of going to a barber shop on the south side of the railroad track, A. T. Billingsley walked from the Goodrich Hotel to the public railroad crossing near the depot, which, at that time, was blocked by one of appellant's eastbound freight trains. Billingsley stopped near the crossing for the train to clear the crossing that he might go on to the barber shop. While standing there at the crossing, he was struck by an open swinging door on a refrigerator car in the passing train, fifteen or twenty cars back from the engine, and instantly killed."

Additional facts reflected by the record are that the door was swinging outward several feet beyond the edge of the car; that the train was made up at some point west of the town of Waller, located between Hempstead and the City of Houston, which is about thirty miles from Waller; that the railroad track, which was a main line, runs east and west through the town; that at the time of the accident the train, a long freight train, was being operated on a through run eastward through Waller toward the City of Houston, "coming pretty fast"; that shortly before the accident two persons were standing about two blocks from the scene of the accident on the same side of the track waiting for the train to pass. One of the witnesses, A. L. Boyd, testified that a colored man, Obie Williams, came up from behind him while he was standing there and jerked him back out of the path of the door. In detailing the occurrence he said among other things: "Well, there was a door on the car in this train, and I was looking back to the rear end and I noticed an object out, you know, and just as I noticed it, this colored fellow grabbed me and jerked me back, * * *. He jerked me right quick back, you know, and it whipped by; * * *. Q. Had you seen the door before the time he pulled you away or not? A. Just a few seconds; it was coming pretty fast. I did not realize what it was, but he just caught me and jerked me back,

saying, 'look out.' " In answering an inquiry as to what he saw or heard take place down near the depot after the train passed he said: "And so just as the train passed where I was at, why—it was just a short distance,—why, then, I heard some hollering, screaming." The witness Obie Williams, in reply to an inquiry as to why he pulled Mr. Boyd back, said: "Because the door was swinging and he was standing pretty close to the track. Q. Even after you pulled him back about how close did Mr. Boyd, or his head, or the upper part of his body, did the open door come? * * * A. Well, about three feet, I guess." He further testified that when he first saw the open door it was "about two cars back" from where he and Mr. Boyd were at the time. Miss Kathleen Boyd, a graduate of the Waller highschool, testified that on the night of the accident she had been to a banquet given for one of the classes in the highschool; that after she started home she saw the deceased as he left the hotel and heard him say he was going across the railroad track to a barber shop. In response to a question as to how long it was from the time she saw him leaving the hotel until she saw him dead, she said: "Well, just after he left, the train came by, and of course when the train passed, well, I heard the screaming and I immediately went over there * * * . When the train went by, I heard someone screaming and of course I went right out on the front porch to go to the scene, * * * ." In response to an inquiry as to the character of wounds she later saw on the body she said: "Yes sir, from his chest up he was just as blue as he could be and he did not have any face left." She also testified that she saw an object protruding from one of the cars of the train as it passed which she observed from the porch of the hotel. It is stated in defendant's brief filed in the Court of Civil Appeals that plaintiff's "proof showed that a *freight train belonging to appellant* passed through Waller with a door swinging on one of the refrigerator cars in said train and shortly after said train passed * * * decedent was found dead at a public crossing *with marks on his person indicating that he had been struck by some blunt object.*" (Italics ours.)

The jury found in answer to special issues that a door of one of the cars of the train was loose and swinging out as the train passed through the town; that defendant failed to secure or fasten the door; that such failure was negligence and a proximate cause of deceased's injuries; and further, that defendant failed to inspect the door to the car prior to the time the train passed through the town; and that such failure was negligence proximately causing deceased's injuries. The jury also found in response to the defensive issues that the position taken by the

deceased with respect to its proximity to the passing train was not negligence, that deceased did not fail to keep a proper lookout for the approaching train and that his death was not the result of an unavoidable accident; also that the train on the occasion in question was under the exclusive control and management of defendant. The defendant offered no evidence of any character.

The facts are sufficiently detailed above to distinguish the present case from Texas & Pacific Ry. Co. v. Endsley, 103 Texas 434, 129 S. W. 342, which the Court of Civil Appeals in rendering judgment for defendant, held to be controlling.

A very different picture is disclosed by the evidence in the present case from that presented by the facts and circumstances surrounding the accident in the Endsley case. Endsley survived to tell the story of the occurrence of the accident which he experienced. It was the view of this Court, expressed through Justice BROWN, that if Endsley's own statement was correct it was not sufficient as a matter of law to support the judgment. A fuller statement of the testimony, particularly Endsley's, will be made here than is set out in the opinion, an examination having been made of the record on file in the Supreme Court Clerk's office. At the time of the occurrence the cars were being pushed in the office yard of the Cotton Belt railroad in the City of Texarkana where Endsley was injured. Endsley's testimony as far as is material here, reads:

"A train was backing up from the rear and I had got aside to let it pass. One or two cars had passed me. They were freight cars. The engine was in the rear of the train at the south end of it. The train was moving in a northerly direction; and I had stepped aside to let it pass. * * * I looked back in the direction it was coming from to see if I was in danger, if there was anything projecting, and I did not see anything. * * * I then looked in the direction I was going, the way the train was going, and as well as I remember I was watching those wheels as they passed over the frogs at the crossing. * * * As to whether I looked back down the west side of the cars for the purpose of seeing whether or not the edge of the cars or anything would strike me, * * * —yes sir, that was my object in looking, * * * . I did not see anything and I looked the other way then * * * . Whatever struck me, hit me on the back of the head. * * * . The train had not got entirely passed me however when I got up. * * * As to whether, after I brought this suit, I made a written statement and signed the statement as to the facts * * * I think I signed it, yes sir. * * * Q. Well, did you

state in that written statement that you signed, to Mr. Rochelle, that you did not see what struck you, and did not know what struck you. A. I did not see anything before it struck me and I did not see it strike me; I made those remarks to him as that way. Q. Did not you make this statement, Mr. Endsley, * * * ; I did not see the object that struck me, but suppose it was some object projecting from the car that struck me. A. I made the remark that I did not see what hit me at the time, no I did not see it, and it is only presumption. * * * I made the statement."

The only testimony as to anything unusual about the train is that of Endsley himself concerning what he saw indistinctly after being struck, which reads:

"After I was knocked down I * * * saw something swinging out from the body of the train, after I got up, must have been 4 or 5 car lengths. I didn't get a very distinct sight—it swung out back. It looked like a door to me. That was after I got knocked down, after I got up."

While in the present case the evidence that the door struck the deceased is circumstantial, it is both pointed and cogent. Not only was the car door observed to be open and swinging out shortly before it reached the place where deceased was found by the side of the track with wounds upon his body indicating he was struck by it, but a person standing a short distance away on the same side of the track was jerked out of the path of the door as it passed him. The testimony relating to the commotion and "hollering" at the scene of the accident just after the train passed, need not be repeated. Other facts distinguish the Endsley case. The cars were being pushed in some character of local switching movement. The number was estimated at from seven or eight to twelve or fifteen, and their speed at from six or eight to twelve or fifteen miles per hour. In Endsley's own language they were "backing up from the rear." They were shoved in a local movement by an engine at their rear and were not part of a through train made up at some point previous to reaching the town. The defendant placed on the stand the Cotton Belt yard master who saw the accident, seeing Endsley as he was in the act of falling and as he regained his footing and walked away. He testified that he had a full view of the side of the cars toward him, the same side Endsley observed when he looked to ascertain if he was in danger, and that he saw nothing unusual about the cars. There was testimony concerning the types and construction of the cars, the nature of the place where Endsley was standing, the construction of a cattle guard which he "had just passed over" when he was struck, and his position

with reference to his proximity to the cars on account of the cattle guard. The testimony was such as to enable the company to urge plausibly, as it did in its application for the writ, that it was just as logical to infer that Endsley was struck by an end sill of one of the cars as to infer he was struck by a swinging door. The alleged negligence was restricted to a swinging door and there was no alternative pleading of negligence relating to any other matter. This court was not put to the necessity of determining, and did not determine, whether the doctrine of res ipsa loquitur was applicable, because of Endsley's own testimony. The court concluded that even if his testimony was conceded to be correct it was sufficient only to raise a suspicion of negligence of some kind and that the accident as described by him *did not bespeak with any substantial degree of certainty* the character of negligence alleged. In other words there was no evidence of probative force, since Endsley could only surmise what it was that struck him, that he was injured as alleged.

In the present case attendant facts and circumstances are in evidence to the effect that defendant was negligently operating a previously made up through freight train through the town of Waller with a door of one of its cars swinging out several feet, and that the door struck and killed young Billingsley who was. a reasonably safe distance from the track where it crosses one of the streets of the town. The defendant offered no evidence of any character. The accident was such as in the ordinary course of things would not have happened if defendant had used ordinary care with respect to the matters alleged. Under the pleadings and evidence and in the light of the surrounding facts and circumstances the trial court did not err in submitting to the jury the issues upon which its findings were made. The Court of Civil Appeals erred in holding that defendant's motion for an instructed verdict should have been granted. Texas & Pac. Ry. Co. v. Greene, supra; McCray et al. v. Galveston, H. & S. A. Ry. Co., 89 Texas 168, 34 S. W. 95; St. Louis Southwestern Ry. Co. of Texas v. Ristine, (Com. App.) 234 S. W. 1086; Missouri, K. & T. Ry. Co. v. Scarbrough, (wr. ref.) 68 S. W. 196.

It is not necessary to determine whether, in view of plaintiffs' pleadings, the evidence rule of res ipsa loquitur is applicable. For the current expressions of this Court on the subject see Gulf, C. & S. F. Ry. Co. v. Dunman, (Com. App.) 27 S. W. (2d) 116, 72 A. L. R. 90; Wichita Falls Traction Co. v. Elliott, (Com. App., on certified question), 125 Texas 248, 81 S. W. (2d) 659, and Rankin et al. v. Nash-Texas Co. et al., (Texas Com. App.) 105 S. W. (2d) 195. Regardless of whether the rule is invoked the evidence supports the verdict and judgment.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court April 13, 1938.

Rehearing overruled May 4, 1938.