KANSAS CITY SOUTHERN RAILROAD COMPANY, Appellant,

v.

Wilbert GUILLORY, Appellee.

No. 6662.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 6, 1964.

Rehearing Denied March 11, 1964.

Orgain, Bell & Tucker, Beaumont, for appellant.

Woodson E. Dryden, Jack M. Carson, Beaumont, for appellee.

McNEILL, Justice.

Appellee· sued appellant for damages· because of· an injury ·received· by him· in ·the course of.·his ·employment· ·for. Gulf· ·States· Asphalt Company. He alleged he was loading cartons of asphalt ·in a ·freight car placed upon the· asphalt company's siding in its ·yard in Beaumont, and while working in, this· freight· car he· slipped and· fell· on small plastic pellets· which were on the· floor ·in. a dark end of the boxcar causing ·him.·to sustain a broken leg and other injuries. As basis for his action he alleged that ·in furnishing.·the car to the shipper, the asphalt company, for loading asphalt, appel-, lant was negligent·,in failing to clean out the boxcar, in ·failing to warn him ·of the plastic pellets on the floor of the ·car, in furnishing the car in a dangerous ·condition and in failing to furnish·,plaintiff¸ a safe place to work. Appellant ,will sometimes be referred to herein· as the Railway Company.

Several grounds of negligence were submitted to the jury. These were: whether the Railway Company failed to properly clean the boxcar and whether this was negligence; whether it delivered said car to the asphalt company with plastic pellets on the floor and whether this was negligence; whether the Railway Company failed to warn appellee that said boxcar had plastic pellets on the floor and ,whether this was· negligence; whether the Railway Company delivered said car in a dangerous condition and whether this was negligence. Following these several issues were issues of proximate cause. All ,of said issues were found favorably to appellee. There were a number of issues submitted on contributory negligence but they were also found in favor of appellee. Judgment was rendered upon said verdict for appellee· and this appeal resulted.

,Appellant attacks . the judgment from various standpoints. We will not attempt ,to state all the points but· content ourselves with a summary of the pertinent questions involved. The primary question, as readily recognized and stated by the parties, is this: "The jugular vein of this case is the trial court's assumption throughout its charge, of one basic duty—the duty to clean or sweep, the floor of a boxcar." The Railway Company asserts the trial court erred in such assumption. The briefs of ·the parties indicate much research on this question and we have done some on our own. Although there seems to be a general unanimity of authority that a railway company is required to exercise ordinary care in order that a reasonably safe car may be furnished for those using it, 75 C.J.S. Railroads § 924, pp. 333–336, the cases all appear to involve some defect of construction or maintenance of the car itself. In the research made, no case ·has been found which defines the duty, if any, of a railway company furnishing a boxcar to ascertain whether the car contains a foreign substance which may injuriously affect a shipper's employees while working therein.

Texts are quoted in appellee's brief. These are: Sec. 392, Restatement of the Law of Torts, which reads in part:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied:

"(a) if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied."

Prosser on Torts:

"* * * the prevailing view is that a railway company is under a duty of reasonable inspection before turning over its cars, and that the obligation extends to employees of a shipper, of a consignee, and of a connecting carrier." Handbook of Prosser on Torts, p. 686.

It is singular that there is a dearth of adjudicated cases on the very point involved. Is that, however, to be taken necessarily that no duty rests upon the part of the furnishing carrier to see that the car furnished is free of foreign substances that would be a hazard for those who would work in the car loading it? Paucity of authority is signal to "stop, look and listen". However, that alone is not decisive.

■■■ If it is the duty of the furnishing carrier to see that its chattel, the freight car, is free of hazards for those who would use it, what is the test to apply? As set forth in 75 C.J.S. Railroads § 924, p. 333, we think the proper general rule is that the railroad is under a duty to use ordinary care to furnish a car that is reasonably safe. See also, 3 Elliott on Railroads, 2nd Ed., Sec. 1265–c, p. 641. The boxcar is a chattel and the duty of one who furnishes a chattel for use is likened to that of an occupier of land to an invitee. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99. It is recognized that those who work in a freight car, as was appellee, are invitees of the railroad—they have a lawful right there. Fort Worth & D. C. Railway Co. v. Hambright, Tex.Civ.App., 130 S.W. 2d 436; 75 C.J.S. Railroads § 905, p. 289; 3 Elliott on Railroads, 2nd Ed., Sec. 1265–c, p. 641. It is said that an occupier of premises owes ordinary care to see that the premises are in a reasonably safe condition for use by his invitees. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073. This is a general and broad statement. So, also is the statement above that a railway company owes the duty of ordinary care to furnish a reasonably safe car for those who would work in it. While general and broad in statement the application of these legal duties is somewhat narrower. As said in commenting upon this broad statement of a land occupier's duty, we quote Justice Pope in Camp v. J. H. Kirkpatrick Co., Tex. Civ.App., 250 S.W.2d 413 at p. 416:

"A more correct statement of an owner's duty would be that he is under a duty to use reasonable care to make and keep the premises free from danger to invitees when the danger is known or should be known by the proprietor."

The duty is not due an invitee that the premises be altered or changed to obviate known and obvious dangers for he takes the premises as they are. Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W. 2d 372, 374. The occupier of premises has no duty to warn a business invitee of dangerous conditions that are obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupier. Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497. The law of this state in our judgment is well summarized in 65 C.J.S. Negligence § 50, p. 541:

"The duty to keep premises safe for invitees applies only to defects which

are in the nature of hidden dangers, and the invitee assumes all normal or obvious risks attendant on the use of the premises."

And in 65 C.J.S. Negligence § 51, p. 545:

"In order to impose liability for injury to an invitee, the dangerous condition must have been known to the owner or occupant or have existed for such time that it was his duty in the exercise of ordinary care to know of it."

Further in this last section, it is said:

"The inviter has a duty to exercise reasonable care to discover defects or dangerous conditions on the premises; he will be charged with knowledge of, and he will be held liable for injuries resulting from, any dangerous condition which he could have discovered in the exercise of ordinary care, but he will not be held liable for defects which would not have been disclosed by a reasonably careful inspection, even though no such inspection has been made."

Roosth & Genecov Production Co. v. White, supra, involved an injury to an employee of an independent drilling contractor who was working on an oil derrick owned and furnished by another party. Because of a collapse of the derrick the employee was injured. The court relying in part upon Sec. 392, Restatement above quoted, held that it was the duty of the supplier of the derrick to have made a reasonable inspection thereof to determine whether defects existed before it was furnished. Likewise, if the condition of the boxcar floor where appellee fell was not open and obvious to him, we hold it was the duty of the railway company to have made a reasonable inspection of the boxcar furnished before it was delivered to the asphalt company. And if the pellets should have been discovered on such an inspection it was its duty to remove or warn of them. Whether the pellets, upon such an inspection would have been discovered under the facts in this record was a jury question.

Appellant argues that if it owes any duty in this respect its duty is discharged by a mere "running-type" inspection; that is an inspection where cars are pulled between two inspectors watching the cars from the ground. We disapprove of this position. The carrier knew that the asphalt company, the shipper, was going to load the car with asphalt and that this would require men to enter and work inside the boxcar. Its duty is commensurate with this knowledge. Railway Company also relies upon Gulf, W. T. & P. Ry. Co. v. Wittnebert, 101 Tex. 368, 108 S.W. 150, 14 L.R.A.,N.S., 1227, holding that the only duty of the carrier was to make an external examination of the car and to place it in proper position to be unloaded. But there the carrier was the final or ultimate carrier, while in the present case it was the initial carrier. There was no evidence offered of any governmental regulation, nor of any custom of the carrier as to cleanliness of a furnished car. If custom existed, it would not be conclusive. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445.

The issues of negligence submitted to the jury were erroneous; they placed an improper and undue burden upon the Railway Company. It is common knowledge that frieght hauled in these cars is usually rough, heavy and difficult to ship in lighter vehicles; and that after the freight is removed trash is often left behind. In respect to the custom of cleanliness, one could hardly compare the rough floor of a boxcar with the shiny, polished floor of the storekeeper. The liability of the Railway Company here rests upon its knowledge, actual or constructive, of the complained of condition. No issue or issues inquiring into this were submitted to the jury and objection was properly reserved thereto.

Appellee asserts that since the boxcar was in the possession of the Railway Company for an undetermined length of time immediately previous to the delivery to the asphalt company, and since the Railway Company made no explanation of nor of-

fered evidence of any attempt at inspection or cleaning the car, that this is sufficient evidence to uphold the findings of the jury. This, perhaps, would be true if the issues which were legally raised had been properly submitted. See Billingsley v. Texas & N. O. R. R. Co., 131 Tex. 410, 115 S.W.2d 398. It cannot apply to the situation before us. There was no finding that the Railway Company had knowledge either actual or constructive of the pellets nor that they could have been discovered in the exercise of ordinary care.

 It is shown that two of appellee's fellow workmen were instructed by the asphalt company that if the cars were dirty to clean them out, including the one involved, preparatory to loading. It does not appear that any inspection or cleaning out was done by them in the car discussed. Appellant asserts tho, that since any obligation it had in this regard was undertaken by the appellee's employer, the sole cause of his injury as matter of law was the failure of appellee's fellow employees to sweep the boxcar. We disagree. Roosth & Genecov Production Co., supra; Sec. 393, Restatement of the Law of Torts. See also Gulf, C. & S. F. Ry. Co. v. Irick, Tex.Civ. App., 116 S.W.2d 1099 (1102); Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299.

While there were various points urged to the different issues submitted the questions may not arise on another trial and we therefore forego comment except to say that it appears to us the inferential-rebuttal defensive issue as to whether appellee's injury was sustained in another place in the asphalt company's plant and at another time should have been submitted.

 Because the case was submitted on the wrong theory and believing justice will be better subserved thereby, we reverse the judgment of the trial court and remand the case for a new trial. London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619.

Reversed and remanded.