**TEXAS SLING COMPANY et al., Petitioners,**

v.

**Samuel EMANUEL et al., Respondents.**

**No. B–532.**

Supreme Court of Texas.

July 24, 1968.

Rehearing Denied Oct. 2, 1968.

Talbert, Giessel, Barnett & Stone, Howell E. Stone, Fulbright, Crooker, Freeman, Bates & Jaworski, Jerry V. Walker and David J. Beck, Houston, for petitioners.

Stanley F. Swenson, Baker, Botts, Shepherd & Coates, Walter E. Workman, Houston, for respondents.

NORVELL, Justice.

H. A. Lott, Inc. was the general contractor for the construction of a school building in Houston, Texas. It leased from H. A. Lott, individually, a Koehring No. 605 crane to be used to lift heavy buckets of concrete from the ground to the various levels of the construction project. It became necessary in the progress of the work to extend the reach of the crane by lengthening its boom twenty feet. H. A. Lott, individually, as owner of the crane, contracted with American Powerstage Company to furnish the twenty foot extension, including extensions for the pendant lines of the crane. American Powerstage in turn contracted with Texas Sling Company, a

specialist in the splicing of wire ropes, to splice the twenty foot extensions. American Powerstage furnished the wire rope. While in operation, approximately six weeks after the extended boom and pendant lines were delivered to H. A. Lott, Inc., one of the splices on one of the pendant line extensions pulled apart and the boom and bucket crashed to the floor level causing personal injuries to Samuel Emanuel, an employee of H. A. Lott, Inc. Emanuel, a respondent here, sued petitioners, Texas Sling Company and American Powerstage Company, for damages; also, H. A. Lott, individually. The workmen compensation carrier for respondent's employer intervened. H. A. Lott, Inc., respondent's employer, also sued Texas Sling and American Powerstage for damages to property. All suits were consolidated and tried to a jury. A judgment awarding a recovery of $75,182 was rendered for Emanuel against Texas Sling; out of this sum, the intervening workmen's compensation carrier was awarded $5,837. The judgment also awarded H. A. Lott, Inc. a joint and several recovery of $7,000 against Texas Sling and American Powerstage for property damage. Texas Sling appealed from the judgment in favor of Emanuel, but only American Powerstage appealed from the judgment in favor of H. A. Lott, Inc. H. A. Lott, individually, was discharged with a take-nothing judgment and no appeal was taken therefrom.

The opinion of the Court of Civil Appeals treated the appeal of Texas Sling separately from that of American Powerstage and held that no reversible error had been shown by either Texas Sling or American Powerstage as appellants in that court. 418 S.W.2d 565. We agree with the appellate court's holding that no error was shown with reference to the appeal of American Powerstage. That court's opinion adequately disposes of the contentions and arguments for reversal. However, we are of the opinion that the Court of Civil Ap-

peals erred in affirming the trial court's judgment insofar as it awarded a recovery by Emanuel (and the compensation carrier) against Texas Sling. Accordingly, the cause of action asserted by H. A. Lott, Inc. against American Powerstage Company is severed from the cause of action asserted by Emanuel against Texas Sling Company. The judgments of the Court of Civil Appeals and the trial court disposing of the claim asserted by H. A. Lott, Inc. against American Powerstage Company are affirmed. The judgments of the trial court and the Court of Civil Appeals relating to the claim of Emanuel against Texas Sling Company and the recovery of the workmen's compensation carrier are reversed and said cause of action is remanded to the trial court for a new trial. The trial court's judgment insofar as it affects nonappealing parties is left undisturbed.

While the opinion of the Court of Civil Appeals mentions the jury's answers to Special Issues Nos. 23 to 26, inclusive, its judgment of affirmance is predicated upon the jury's answers to Special Issues Nos. 14, 15 and 16. The brief filed by Emanuel in the Court of Civil Appeals, which is incorporated in the reply to the application for writ of error, contained two counterpoints, one relying upon "the failure to inspect" set of issues, that is, Nos. 14, 15 and 16, and the other upon the jury's answers to Special Issues Nos. 23 to 26, inclusive, which Emanuel contends are products liability issues. The root or primary issue of this cluster or series of issues relates to a transaction or agreement between Texas Sling and American Powerstage, viz.:

"Do you believe and find from a preponderance of the evidence that Mr. Eddie Coffer, acting for and on behalf of Texas Sling Company, orally agreed with Mr. John Goss (a representative of American Powerstage) to furnish splices as necessary to make two 20-foot wire ropes suitable for use as boom pendant cables?"[1]

---

I. The jury also found in the three issues following No. 23 that one of such splices

was not suitable; that such splice caused the boom pendant to be immediately dan-

This issue seems to suggest something in the nature of an express agreement or warranty. We have difficulty in ascertaining the exact theory upon which Emanuel sought recovery under this issue and those immediately following it. The pleadings afford no help. Recovery under the doctrine of implied warranty or strict liability in tort is applicable to certain specialized situations and from an inspection of the pleadings, we conclude that the cause was pleaded as a negligence case and not one of implied warranty or strict liability.

▇ The Court of Civil Appeals sustained the trial court's judgment upon the theory that Texas Sling failed to inspect the splice that failed (Issue No. 14); that such failure was negligence (Issue No. 15) and the proximate cause of Emanuel's injuries. We agree with that court's observation that such evidence is "scanty and circumstantial in nature," but disagree with its holding that such evidence has probative force. In our opinion, the evidence furnishes nothing more than a basis for a surmise, guess or conjecture, and consequently Texas Sling's "no evidence" points should be sustained.

In discussing the evidence, we point out that this lawsuit was not tried as a res ipsa loquitur case. There were no pleadings specially invoking the doctrine but on the contrary, Emanuel set forth a number of grounds which he said constituted negligence. As mentioned by the Court of Civil Appeals, the question of whether Texas Sling failed to use the number of tucks in making the splice that "a splicer of ordinary prudence would have used in the exercise of ordinary care" was submitted to the jury and was not answered in the affirmative. On this issue, the plaintiff Emanuel failed

to meet the burden of proof.[2] The testimony as to failure to inspect, if it can be considered as evidence at all, was highly circumstantial. No one testified that the splice in question was not inspected. H. G. Sutton, Jr., the President of Texas Sling, testified that it was the practice of the company to inspect the splices made by it after they had been completed and that E. W. Coffer was charged with this responsibility. Coffer testified that in 1961, at the time the particular splice was made, he was occupying a managerial position with Texas Sling; that it was customary for a senior employee to inspect completed splices, but he did not remember whether he had made an inspection of this particular splice or not. The jury answered that no inspection was made. The only circumstance available to show that no inspection was made was the fact that the splice failed, i. e., the fact that the splice broke shows that it had not been inspected.

On the issue of proximate cause, it is necessary to go further into the realm of surmise and conjecture. The splice did not part until after it had been in use for some six weeks.[3] Yet it is urged that had an inspection been made, Emanuel would not have been injured. This, despite the circumstance that the specific defect which caused the splice to fail is not known. To reach this result, one must first presume that an inspection was not made, then presume that had an inspection been made, it would have disclosed the defect which caused the splice to part some six weeks later. The basis of all this speculation and the piling of one presumption upon another is nothing more than the fact that the splice failed to hold.

gerous, and that the action of Texas Sling in furnishing the splice was the proximate cause of the accident. See 418 S.W.2d 567.

2. The accepted method of splicing cables is set out in the opinion of the Court of Civil Appeals. See footnote, 418 S.W.2d 568. The evidence discloses that the brazing of cable ends was done to

facilitate the handling of the cable by eliminating protruding wires rather than to strengthen the splice.

3. In the theory of general negligence or res ipsa loquitur, control of a defective device by the party sought to be charged with liability is often an important consideration in determining the applicability of the doctrine.

It is one thing to imply negligence generally from the happening of an event, but quite another thing, when the defect in an instrumentality is unknown, to infer that the cause of the unknown defect would have been discovered had an inspection been made. In attempting to construct a bridge with these presumptions having no factual basis, the argument seems to run as follows: We do not know the specific cause of the event, but we assume that it was negligent in nature because the resulting event or accident would not have occurred in the absence of negligence and then, having thus established negligence, we supply the previously unknown cause by the simple assumption that there being no other explanation, we will simply infer that the unknown defect would have been discovered had an inspection been made.

General negligence is a recognized basis of tort liability, but the rules relating thereto are rather formalized and must be followed if a recovery is to be sustained upon that theory. A case tried upon specific acts or omissions of negligence is a different type of action. However, in the present case, the establishment of general negligence is reached by reasoning similar to that employed in a res ipsa loquitur case. The root issue—failure to inspect—generally the first to be decided, is reached by a species of backward reasoning, so to speak. It is an interesting but unsound technique. Even one with small imagination may by surmise supply a number of possible defects or reasons why the splice failed. The circumstance that one of these surmises may correspond with a similar surmise made by a jury cannot raise the surmise to anything more than a conjecture which will not support a jury finding.

In Fort Worth Belt Ry. v. Jones, 106 Tex. 345, 166 S.W. 1130 (1914), Chief Justice Brown, writing for this court in answering a certified question, laid down the following rule which has been generally followed in this state. (See, Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791

[1955]). The court in Forth Worth Belt Ry. v. Jones said:

"A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption.' 16 Cyc. 1051; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S.W. 324. * * *"

See also, Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Farnie v. Fair Store, Inc., 304 S.W.2d 752 (Tex.Civ.App.1957, writ ref'd n. r. e.).

Ordinarily, when we hold that a jury's findings relied upon to support a judgment lack support in the evidence as a matter of law, we render judgment rather than remand the case. However, this rule is not invariably applied. Both this court and the Courts of Civil Appeals "have a wide discretion in determining whether or not a case should be remanded for new trial on reversal." Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369 (1943); Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup.1966). As a majority of the court is of the opinion that in the interests of justice, a remand for a new trial should be entered, it is accordingly so ordered.

Judgments of the trial court and the Court of Civil Appeals affirmed in part and reversed in part in the terms indicated in the forepart of this opinion.

Dissenting opinion by STEAKLEY, J., joined by SMITH and POPE, JJ.

Dissenting opinion by GRIFFIN, J.

### DISSENTING OPINION

STEAKLEY, Justice.

I respectfully dissent. Emanuel is entitled to his judgment under the findings of

the jury and the support therefor in reasonable inferences which may be drawn from the evidence. In my view, this is true whether we speak in terms of the doctrine of res ipsa loquitur or of the inference of negligence theory of recovery.

The affirmative jury findings as to Texas Sling, identified by number, were these: (3) Texas Sling knew of the intended use of the wire rope it spliced; (10) immediately prior to the falling of the boom, one of the splices in the new twenty-foot pendant cable extension failed; (11) the splice that failed was made by Texas Sling; (14) Texas Sling failed to make such inspection of the splices of the pendants as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances; (15) the failure to inspect was a proximate cause of the accident; (23) Texas Sling orally agreed to furnish splices as necessary to make twenty-foot wire rope suitable for use as boom pendant cables; (24) one of such splices was in fact not suitable for its intended use as a boom pendant; (25) such splice caused the boom pendant to be imminently dangerous when used for the purpose for which it was intended; (26) the act of Texas Sling in furnishing such splice was a proximate cause of the accident; and (31) Emanuel was damaged.

In attacking Emanuel's negligence theory of recovery, Texas Sling centers upon the jury findings that one of the splices made by Texas Sling failed; and that Texas Sling failed to make a reasonable inspection, which failure was a proximate cause of the accident. The majority has accepted the theory of Texas Sling that there is no evidence of a defect in the splice which caused it to slip, or of negligence on its part, or that its negligence in failing to reasonably inspect, as found by the jury, was a proximate cause of the accident. I will review the evidence which in my opinion, with the reasonable inferences therefrom, and under the authorities later reviewed, support these jury findings. In

such review all evidence favorable to Texas Sling is rejected and consideration is given only to the facts and circumstances which tend to sustain the verdict. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914). With particular emphasis upon findings of proximate cause, we said in Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957): "Moreover, we must approach a determination of the question in the light of our former admonition regarding questions of 'no evidence' that 'Appellate courts are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts—the undisputed facts must be ample and clear, and the circumstances most exceptional to justify such action.'" In Miller v. Fleming, 149 Tex. 368, 233 S.W.2d 571 (1950), we reiterated the rule that "The law only demands the best proof of a transaction that it is susceptible of, and when that is produced then it becomes a question whether or not its probative force is such as to establish its existence," and said "The rule by which presumptions of fact are made admissible emanates from the evidence. The application of the rule depends upon the character of the evidence, and its application is liberalized when the evidence is circumstantial. * * The application of this rule rests upon the necessity of the situation."

Very recently, in Thoreson v. Thompson, 431 S.W.2d 341 (Tex.Sup.1968), we reaffirmed the principle that "broad latitude should be allowed to jurors to infer proximate cause from the circumstances surrounding an accident," where the direct evidence of the origin and cause of the occurrence has been destroyed.

It is undisputed that Texas Sling made the pendant line extensions, a splice of one of which slipped and separated, resulting in the injuries to Emanuel. Texas Sling did so in the performance of its specialized service and with knowledge of the intended use of the pendant line extensions, and of the danger to all persons

within the sweep of the crane if the work was improperly performed. Texas Sling employed what is known in the industry as a "thimble eye splice." This type of splice is accomplished by looping each end of the rope around a thimble and splicing the ends of the rope into its body. The splicing process consisted of intertwining and weaving strands of the rope which looped the thimbles into the strands of the body of the rope in a spiral pattern. The finished product consisted of twenty-foot rope extensions with looped thimbles on each end containing appropriate devices for attachment to the existing pendant lines. The splices thus fabricated will hold to the point of breakage in the rope itself if the crane assembly is used in an ordinary and safe manner. The crane assembly in question, with the newly spliced extensions, had been in use approximately six weeks at the time of the accident. The crane operator testified that he alone operated the crane after the extension assembly was delivered—"I was assigned to the crane and nobody gets on my rig except me"—and had done so in an ordinary and usual manner; further that on the day of the accident he was "booming up" a bucket of concrete of comparable weight to those handled on previous occasions during the course of the construction of the building. Witnesses for Texas Sling stated that it was standard procedure for a senior member in the shop to examine a splice after completion; no one could state, however, that the splices in question were in fact so inspected. One of such witnesses further stated that a splice would pull apart if the splicer "gets fouled up" in making the splice.

The allegations of Emanuel charged Texas Sling with negligence generally, i. e., "in negligently splicing the cable used on said boom and crane" and "in splicing cables in an unworkmanlike manner." It is clear under our decisions that the doctrine of res ipsa may be invoked under such general allegations. We said in Bond v. Otis Elevator Company, 38 S.W.2d 681 (Tex.Sup.1965):

"In other words, if the doctrine of res ipsa loquitur applies it is not necessary to plead and prove specific acts of negligence in order for the case to go to the jury on the question of negligence generally. As we view this case we conclude that the finding of failure to properly maintain the elevator in question is not specific, but is general. * * The character of this accident is one that does not ordinarily happen in the absence of negligence."

Here specific acts of negligence were not pleaded as to Texas Sling and the finding of failure to inspect is likewise general. See also Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935). It is required, of course, that the pleadings of the plaintiff be such as not to mislead his adversary into believing that res ipsa will not be invoked. Such is the case where specific acts of negligence are alleged and the pleadings contain no allegation that the plaintiff does not intend to be restricted thereto, Wichita Falls Traction Co. v. Elliott, supra, Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (1937), and this is the usual problem. It was remarked of pleadings carrying doubtful but sufficient notice in Simmons v. Terrell Electric Light Co., 12 S.W.2d 1011 (Tex.Comm.App.1929, holding approved), that the plaintiff "did not exactly choose and mark off the field of battle, and defendant had no right to indulge a supposition that he would yet do so." The general allegations of Emanuel did not carry notice that he would limit his case to specific acts of negligence since none was pleaded; and such allegations are not such as to lead Texas Sling to suppose that Emanuel would not rely on the facts and circumstances of the accident and upon the rule of res ipsa.

Long ago this Court said in Texas & N. O. R. Co. v. Crowder, 63 Tex. 502 (1885):

" * * * the accident is of such character as, of itself, when considered in connection with the facts which necessarily

appear in showing the accident, to amount to sufficient proof of the want of due care by a defendant * * * to authorize a jury to find [such fact] without any direct proof * * * if from these * * * a jury may reasonably infer negligence in the defendant contributing to the injury * * * then he [the plaintiff] is entitled to a verdict * * *."

This was reaffirmed in McCray v. Galveston, H. & S. A. Ry. Co., 89 Tex. 168, 34 S.W. 95 (1896), by extensive quotations from the opinion, and where there was cited with approval the general rule stating "But the very nature of the accident may of itself, and through the presumption it carries, supply the requisite proof. * * * The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

Later, in Missouri, K. & T. Ry. Co. of Texas v. Cassady, 108 Tex. 61, 184 S.W. 180 (1916), it was said: "We think the facts of the present case bring it within the rule, equally announced in McCray v. (Galveston, H. & S. A. Ry. Co.) Railway Company, that the circumstances of the particular accident may themselves furnish proof of negligence * * *." The facts of the case appear in the opinion of the intermediate court, Tex.Civ.App., 175 S.W. 796. The deceased was a head brakeman who was critically injured in an accident alleged to have been caused by a defective railroad bridge or by defective supports. The problem of pertinence here was summarized as follows: "Just how the accident occurred, it is true, no witness is able to definitely state, but it is without question that the tender in this train left the track, and it is a reasonable presumption, it seems to us based upon testimony in the case, and especially that quoted in this opinion, that such derailment was caused by some unexplained defect raising an inference of negligence as charged."

In Bock v. Fellman Dry Goods Co., 212 S.W. 635 (Tex.Comm.App.1919), the deceased was killed by falling into an open elevator shaft. There was no direct testimony as to the cause of the accident. The court held that such could be inferred from the circumstances in evidence, and quoted the following with approval:

"A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about such result."

In Billingsley v. Texas & N. O. R. Co., 131 Tex. 410, 115 S.W.2d 398 (1938), a pedestrian was killed at a public crossing by an open swinging door of a car in a previously made up through freight train. The Court found support for the verdict and judgment against the railroad, saying: "The accident was such as in the ordinary course of things would not have happened if defendant had used ordinary care with respect to matters alleged." Cf. Simmons v. Terrell Electric Light Co., 12 S.W. 2d 1011 (Tex.Comm.App.1929); Roberts v. Texas and P. Ry. Co., 142 Tex. 550, 180 S.W.2d 330 (1944); Sam White Oldsmobile Co. v. Jones Apothecary, Inc., 337 S.W.2d 834 (Tex.Civ.App.1960, writ ref., n. r. e.); and Beaumont Iron Works Co. v. Martin, 190 S.W.2d 491 (Tex.Civ.App.1945, writ ref., w. o. m.).

The principle that inferences of negligence arise from unexpected and unexplained occurrences is also recognized in federal jurisdictions. A case closely in point to the facts at bar is Jones & Laughlin Steel Corporation v. Matherne, 348 F.2d 394 (5th Cir. 1965). The court affirmed a judgment against the manufacturer of a "Jal Klamp" fitting on a pendant

line supporting a crane boom which fractured or cracked allowing the boom to fall causing the death of a workman. The device had been in use from May, 1959, to the time of the accident on September 7, 1960. The court reasoned that under every fair and reasonable inference justified by the evidence, the jury could reasonably find, as it did, that the manufacturer was negligent. The court cited the testimony of the operator that the crane had been used in moving the rated loads with which the crane could be safely operated.

In Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825 (3rd Cir. 1951), the court affirmed a judgment for a workman who was injured because of the disintegration of a grinding wheel which he was using. In doing so, the court said:

"Defendant argues on appeal that there was no evidence of negligence because no witness identified any defect in the wheel. Defendant's version of the law would cast upon a plaintiff in a case such as this an almost impossible burden; for where an abrasive wheel disintegrates, direct proof of the existence of a defect might be virtually impossible. * * * The burden of the scientific limitations of our society should not be cast on injured plaintiffs in circumstances such as existed in the instant case."

Cf. International Derrick and Equipment Co. v. Croix, 241 F.2d 216 (5th Cir. 1957); and Pryor v. Lee C. Moore Corporation, 262 F.2d 673 (10th Cir. 1958). See also Robinson v. Nightingale, 188 Kan. 377, 362 P.2d 432 (1961); and Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847 (1950).

Application of res ipsa is not precluded by the fact that the fabricated splice had been in use by the contractor for six weeks and was not under the control of Texas Sling at the time it failed. It was recognized by this Court in Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968,

160 A.L.R. 1445 (1944), that as a general rule application of the evidence rule of res ipsa loquitur requires that the instrumentality causing the injury be under the management and control of the alleged wrongdoer. But the Court approved application of the rule to the "bursting bottle" or sealed container situations where control has passed from the manufacturer, citing Benkendorfer v. Garrett, 143 S.W. 2d 1020 (Tex.Civ.App.–San Antonio 1940, writ dism'd judgmt cor.), and quoting with approval the reasoning of the Court of Appeals of Georgia in Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087:

"Since for every effect there is a cause, where negligence exists, some one must have been the responsible author. If he can be found, it is right that he should pay the penalty. The bottle exploded. Inferentially some one was negligent. It was not Cook the last vender of the bottle, nor the plaintiff's brother, nor the plaintiff, nor yet Barnett, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault. But the inference of negligence remains, and some one is prima facie to blame. By a process of elimination we get back to the manufacturer, who set the dangerous agency in motion, and upon whom the blame ought inferentially to be fastened. It is certainly no hardship to require at the manufacturer's hands an explanation of the occurrence, that the jury may say whether it, like the other persons who handled the bottle has been exonerated."

Thereafter, the Court of Appeals for the 5th Circuit in Dement v. Olin-Mathieson Chemical Corporation, 282 F.2d 76 (5th Cir. 1960), reversed a trial court judgment against the plaintiff who was injured by the premature explosion of a charge being prepared for seismograph operations. The defendants urged that regardless of the errors asserted by the plaintiff against ex-

clusions in the charge of the court of various theories of recovery, they were entitled in any event to a directed verdict because the evidence did not indicate with requisite certainty what caused the explosion or that any of the defendants were negligent in any regard. Citing *Honea,* supra, the Court reasoned:

"We agree with Dean Prosser's statement. 'Since the injured plaintiff almost never has any direct proof of what has occurred in the manufacturer's plant, he usually must resort to circumstantial evidence. In the ordinary case, this means that he must rely upon the doctrine of res ipsa loquitur. * * *' Prosser, Torts, § 84 at 505. As this Court has pointed out, the doctrine of res ipsa loquitur '* * * is simply a facet of the general law that verdicts may rest upon circumstantial evidence.' Revlon, Inc. v. Buchanan, 5 Cir., 1959, 271 F.2d 795, at page 799. See Prosser, Torts, § 42.

"For the doctrine to be applicable, the plaintiff must have been injured by an instrumentality which, at the critical point in time, was within the defendant's exclusive control. The critical point of time is not necessarily the precise time of injury. Rather, it obviously refers to the time the probable negligence inferred from the occurrence of the event took place. Ozark v. Wichita Manor, Inc., 5 Cir., 1958, 252 F.2d 671, at page 675 (on rehearing, 5 Cir., 258 F.2d 805). If the casualty is a sort which in the ordinary course of things would not occur in the absence of negligence, an inference that it was due to the defendant's negligence is allowable. Honea v. Coca Cola Bottling Co., 1944, 143 Tex. 272, 183 S.W. 2d 968, 160 A.L.R. 1445; Ozark v. Wichita Manor, Inc., supra. Thus, the theory is grounded upon the improbability of an accident occurring in the absence of negligence of the actor who controlled the forces causing the harm. Here, it is entirely reasonable to assume and, in fact, based upon ordinary experience,

highly probable that these explosive charges when used under normal, contemplated circumstances would not prematurely explode in the absence of some serious defect. In fact, such is the evidence offered by the defendant. If such an unexpected explosion occurs, something seriously has gone wrong. Defendants do not deny this but simply point elsewhere for the explanation. This is translated into terms that res ipsa may not aid the plaintiff since he is unable to identify the particular cause of the explosion which must necessarily be separated out and identified to implicate any individual defendant.

"Here there can be no doubt that the components of the explosive charge were under the exclusive control of the defendants at the critical manufacturing stage."

As heretofore noted, the jury convicted Texas Sling of negligence proximately causing the accident in its failure to inspect the splices of the pendant line extensions. In related findings the jury found that Texas Sling knew of the intended use of the wire rope it spliced and that one of the splices made by Texas Sling failed. The majority has concluded that the judgment in favor of Emanuel is insupportable under these findings because there was no direct evidence of a specific defect in the splice or that the failure of Texas Sling to inspect the splice prior to delivery for its intended use was a proximate cause of the accident, and of the injuries and damages suffered by Emanuel. But establishing a specific defect after the fact—after the splice pulled apart—and that such would have been discoverable by a reasonable inspection, was an insuperable burden under the circumstances. However, the basic fact established by the evidence is that a properly fabricated splice has the life expectancy of the rope and will hold to the point of breakage of the rope itself under ordinary usage. The evidence supports an inference that such was not done here and that there was fault in the actual splicing process. Only

Texas Sling was in a position to determine if the pendant line extensions were properly and safely spliced. It was under the duty of making sure that such had been done, whether by inspection of the work during its progress or upon completion. Texas Sling offered no explanation of the failure, and it should not escape liability in the fact there is no direct proof that a defect existed in the splice attributable to its specialized work or that it would have discovered the failure in the splicing process by a reasonable and timely inspection. There being no other explanation, the inferences are reasonable and warranted that the pendant line extension which failed was defectively spliced by Texas Sling; that Texas Sling failed in the duty to determine by proper inspection whether or not such had occurred; and that such proximately caused the accident.

I would affirm Emanuel's judgment.

SMITH and POPE, JJ., join in this dissent.

## DISSENTING OPINION

GRIFFIN, Justice.

I concur with the result of the dissenting opinion written by Mr. Justice Steakley; however, I cannot agree that this result may be reached by the application of res ipsa loquitur. This theory was not pleaded by the plaintiff, but to the contrary, the plaintiff's pleadings rely upon specific acts of negligence alleged to have been committed by Texas Sling and American Power-stage Company. No issues on the doctrine of res ipsa loquitur were submitted to the jury; therefore, no judgment can be based on this doctrine.

In my opinion, the jury's answers to Special Issues 14, 15, and 16 convict the defendant Texas Sling of negligence, which was the proximate cause of plaintiff's injuries; therefore, the plaintiff is entitled to have his judgment as rendered by the trial court.